The appellant, Dennis Hardin Woods, was convicted of driving under the influence of alcohol and of speeding. He was fined $270.00 and costs.
The state's evidence tended to show that appellant Woods was stopped for speeding by Alabama State Trooper Clyde Owens on February 25, 1990. The appellant was clocked, by radar, going 77 miles per hour in a 55-mile per hour zone. When Owens approached the appellant's car to ask him for his driver's license, he smelled a strong odor of alcohol on the appellant. Owens asked the appellant to come and sit in his vehicle. As the appellant walked to Owens's patrol car, Owens observed the appellant stumble and stagger. Trooper Owens performed several field sobriety tests on the appellant prior to the appellant's getting into the squad car. After observing the appellant perform these tests, Owens arrested the appellant for driving under the influence of alcohol. Two children were in the appellant's car, so Owens radioed for someone to come and take the children home. When Owens went back to the appellant's car, he noticed a plastic cup and liquid spilled on the driver's side floor-board; both smelled of alcohol.
Owens and the appellant waited approximately 20 minutes for someone to pick up the children. The appellant was then taken to the Jefferson County jail where his blood alcohol level was tested on the Intoxilyzer 5000 machine. The appellant's blood alcohol content was .124%.
 I
The appellant initially argues on appeal that the circuit court erred to reversal in not allowing a defense witness to testify as a expert. The appellant maintained during the course of the trial that the reading of the Intoxilyzer 5000 was inaccurate because he had snuff in his mouth when he took the test. The appellant offered the *Page 105 
testimony of Mr. Chip Walls, who was qualified as a forensic toxicologist, to show that snuff in an individual's mouth would affect the intoxilyzer's reading. However, no evidence was offered to prove that the witness had technical training about the workings of the machine.
 "To qualify as an expert, the witness must have such knowledge, skill, experience or training as that his opinion will be considered in reason as giving the trier of fact light upon the question to be determined."
C. Gamble, McElroy's Alabama Evidence § 127.01(5) (4th ed. 1991).
Certainly, when a machine provides evidence for the prosecution that the defendant is guilty of a crime, the accuracy and efficiency of the machine may be challenged. The method of challenging the working of a machine is by offering expert testimony concerning it. Here, however, a sufficient foundation was not laid, and we conclude that the trial court did not abuse its discretion.
 II
The appellant next argues that the trial court erred in allowing the Intoxilyzer 5000 results to be received into evidence.
 "In Ex parte Bush, 474 So.2d 168 (Ala. 1985), the Alabama Supreme Court reiterated that the following predicate must be laid for the admissibility of evidence of blood alcohol content, pursuant to § 32-5A-194(a)(1), Code of Alabama 1975:
 " 'This predicate may be established by showing, first, that the law enforcement agency has adopted the particular form of testing that was in fact used. Second, there must be a showing that the test was performed according to methods approved by the State Board of Health. This may be proved by the introduction of the rules and regulations the officer followed while administering the test and the officer's testimony that he did, in fact, follow those rules when he administered the test in question. Third, there must be a showing that the person administering the test has a valid permit issued by the State Board of Health for that purpose.' 474 So.2d at 170 (citations omitted)."
Vizzina v. City of Birmingham, 533 So.2d 652, 654
(Ala.Cr.App.), aff'd, 533 So.2d 658 (Ala. 1988); see also Jonesv. State, 513 So.2d 50 (Ala.Cr.App. 1986).[1]
The appellant does not question the first and third prongs of the predicate. The appellant's only contention is that the testimony of the officer was not sufficient to show that the test was performed according to the methods authorized by the Department of Forensic Sciences. According to the operational procedures, approved by the Department, the "subject must be under observation by the arresting officer and/or operator for a period of twenty minutes before the test is administered."
In the instant case, the prosecutor introduced the rules and regulations the officer used when conducting the test. Officer Owens stated that he and the appellant waited 20 minutes for someone to pick up the other occupants of the appellant's car before they left the scene. Owens also stated that it took approximately 25 minutes to ride to the jail and that the appellant was sitting beside him in the front seat during the drive. During that time, the appellant did not eat, smoke, drink, belch, burp, dip snuff, or spit. Officer Owens stated on cross-examination that the appellant might have had time to put something in this mouth that he did not notice. The appellant was also observed for five minutes by James West, with the Jefferson County Sheriff's Department, the officer who conducted the intoxilyzer test. West also testified at trial that the appellant did not eat, smoke, drink, belch, burp or dip snuff while he was administering the test. West further stated that he did not believe that the appellant had anything in his mouth when he took the test. The appellant maintained at trial that the periods that the officers observed the appellant *Page 106 
could not be tacked together. Thus, he contends, one officer should have observed the appellant for the required 20 minutes immediately prior to the test. We do not agree. Several officers may observe an arrestee at different times before the administering of the intoxilyzer test. See Gibson v. City ofTroy, 481 So.2d 463 (Ala.Cr.App. 1985).
The appellant maintains on appeal that the results should not have been received into evidence because Officer Owens on cross-examination stated that it was possible that the appellant had had time to put something in his mouth without his noticing. The appellant maintained at trial that he had snuff in his mouth when he took the test. This testimony would not affect the admissibility of the test results but would affect the weight accorded this evidence. The weight to be accorded the evidence is a question for the jury. Compare Terryv. City of Montgomery, 549 So.2d 566 (Ala.Cr.App. 1989).
 III
The appellant next contends that the trial court erred in limiting his cross-examination of West. When West was testifying, the appellant attempted to ask him several questions about the internal operations of the intoxilyzer machine. The appellant's counsel asked the following question of Officer West:
 "Q — I want to ask you a few questions about the Intoxilyzer 5000 machine. Do you know anything about how the machine computes the breath sample, or how it tests the breath sample, to give a result?
"A — No, sir. I'm certified only to operate it.
". . . .
 "Q — I assume then what they teach you, as you've already told us really, basically, is how to operate the machine?
"A — Yes, sir.
". . . .
 "Q — You told us it gave a .124% reading. What does that mean?
 "A — That is what the instrument has ascertained being the blood alcohol content at the time of the test.
 "Q — Is that test in grams per liter of air or grams of blood?
"Mr. Bowers [Prosecutor] — I'm going to object.
 "The Court: I sustain the objection. This man, as I told you before, is the operator. He doesn't know anything about that and isn't required to know it.
 "Q — Does the 2100 to one ratio mean anything to you?
 "The Court: Mr. Burton, all of that is out of order. As I told you, and I will tell this jury, this man is trained to operate it. . . .
 "Mr. Burton: I'll stay away from any technical questions."
It is clear from West's testimony that he was not trained in the internal workings of the intoxilizer machine. The trial court committed no error in limiting defense's questions on this point.
 IV
The appellant further argues that the trial court committed reversible error by charging the jury on both sections of §32-5A-191(a)(1) and (a)(2), Code of Alabama 1975. Sections32-5A-191(a)(1) and (a)(2) state:
 "A person shall not drive or be in actual physical control of any vehicle while:
 "(1) There is 0.10 percent or more by weight of alcohol in his blood;
"(2) Under the influence of alcohol."
The appellant was charged under § 32-5A-191(a)(2). In the instant case the trial court gave the following instruction:
 "The law of this State includes the standard that a person is presumed intoxicated if the weight of alcohol in his blood is .10 or more. However, I respectfully admonish and caution you that the presumption is rebuttable. You should consider all the evidence you have heard in this case, including the exhibits admitted, if there are any such exhibits, in reaching a decision on the issue." *Page 107 
The following occurred when the appellant's counsel objected to the above instruction:
 "Mr. Burton [Defense Counsel]: I want the record to reflect that the case has not been submitted to the jury yet and we are still here in open court, and I want to state another objection to the Court's charge. I want to object to the Court charging on 32-5-A-191(a)(1), when the Defendant is accused of violation of 32-5-A-191(a)(2).
 "The Court: What makes you say I charged under (a)(1)?
 "Mr. Burton: The level of testing and the presumption.
 "The Court: I think that's correct for me to do. When they introduced a chemical test it's admissible; and, therefore, I instructed the jury, as I did in my charge, that it is a rebuttable presumption, that they are to consider all the evidence that they heard on whether or not this Defendant was, in fact, drunk. I believe I told you earlier under [Ex parte] Buckner, 54[9] So.2d [451] 453, [Ala. 1989] in a prosecution under Subsection (A)(2) of 32-5-191, although the prosecution may introduce the results of the chemical test for intoxication, it is not required to do so; but, in the event they introduce it, then I always charge them as I did in this case. . . ."
In the instant case, the trial court instructed the jury that a blood alcohol level of .10% is a rebuttable presumption. The above instruction was an explanation to the jury on the evidence presented at trial. No error occurred here. SeeHarry v. State, 571 So.2d 392 (Ala.Cr.App. 1990).
 V
The appellant next argues that the trial court erred in not giving the jury his requested instructions numbered 2 and 12. Requested instruction 2 stated: "The taking of one or more drinks of intoxicating liquor would not of itself be sufficient to establish the fact of intoxication." Requested instruction number 12 stated:
 "You are instructed that the Defendant's admission that he drank an alcoholic beverage before driving his automobile in itself alone is not sufficient to prove beyond a reasonable doubt and to a moral certainty that he was under the influence of an intoxicating liquor when he drove his automobile upon a public highway."
The requested jury instructions which are contained in the record do not show whether they were refused or given. "[T]he charges must be marked 'given' or 'refused' " by the trial court. Kitsos v. State, 574 So.2d 979, 984 (Ala.Cr.App. 1990). The failure of the trial court to mark the requested instructions as "given" or "refused" precludes this court from considering this issue on appeal. See Kitsos.
The record reflects that the appellant's only objection after the trial court's instructions to the jury was the failure of the trial court to give his requested charge number 2. Thus, the failure of the court to give requested charge number 12 has not been preserved for our consideration. See Rule 14, A.R.Crim.P.Temp. (now Rule 21, A.R.Crim.P.).
The circuit court committed no error in failing to give charge number 2 since it is an incomplete statement of the law and would have confused the jury.
 VI
Last, the appellant contends that the trial court erred in not granting his discovery motion. The appellant filed a lengthy motion for discovery on the day the appellant's case was set for trial. This court has stated on several occasions that a trial court commits no error in denying a discovery motion made on the day of trial because "the lateness of the motion would delay the trial." Daniels v. State, 375 So.2d 523,529 (Ala.Cr.App. 1979); Juzang v. State, 348 So.2d 516
(Ala.Cr.App. 1977); Fuller v. State, 338 So.2d 492 (Ala.Cr.App. 1976).
Furthermore, the trial court noted that the materials that defense counsel requested were just as accessible to the appellant as they were to the state and that the materials could have been obtained before *Page 108 
the beginning of the trial. No error occurred here.
For the reasons stated above, this case is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] Section 32-5A-194 was amended in 1988 to substitute the Department of Forensic Sciences for the State Board of Health, as the approving agency.