The appellant, Debra Jean Brown Seewar, was convicted of driving under the influence of alcohol, a violation of §32-5A-191(a)(2), Code of Alabama 1975. She was sentenced to pay a $250 fine and court costs and to attend DUI school.
The prosecution's evidence tended to show that on May 1, 1991, Officer Roy Nix of the Summerdale Police Department clocked the appellant driving 57 m.p.h. in a 45 m.p.h. zone as she drove north on Alabama Highway 59 in Baldwin County. When Nix pulled into a convenience store parking lot to turn around and pursue her, an off-duty officer with the Foley Police Department drove up next to him and told him that he had seen the appellant "driving all over the highway" (R. 104).
Nix then pursued the appellant and, after noticing that she was weaving as she drove, pulled her over just inside the Summerdale police jurisdiction. The appellant got out of her car and walked towards the police car and spoke with Nix. He noticed that the appellant swayed as she walked, that her speech was slurred, and that she smelled of alcohol. When Nix asked her if she had been drinking, the appellant replied that she had had "several drinks" (R. 108).
When the appellant failed to successfully complete two field sobriety tests (namely, the "one-leg stand test" and the "walk-and-turn test"), Officer Nix arrested her for driving under the influence.[1] An Intoxilyzer *Page 200 
5000 test was administered to the appellant at the Robertsdale Police Department. The test indicated that her blood alcohol content was .132, exceeding the legal limit by .032.
The appellant presents four issues on appeal.
 I
The appellant initially contends that the circuit court erred when it denied her pretrial motion to suppress the results of the field sobriety tests and of the Intoxilyzer 5000 test. More specifically, she argues that the "one-leg stand test," the "walk-and-turn test," and the Intoxilyzer 5000 test are novel scientific tests that under Frye v. United States, 293 F. 1013
(D.C. Cir. 1923), and Prewitt v. State, 460 So.2d 296, 301
(Ala.Cr.App. 1984), require experts to testify as to their reliability and general acceptance in the scientific community. See also, C. Gamble, McElroy's Alabama Evidence § 490.01(1) (4th ed. 1991).
Obviously, before Frye is applicable, the test in dispute must qualify as a scientific one. Ex parte Dolvin,391 So.2d 677 (Ala. 1980); Handley v. State, 515 So.2d 121 (Ala.Cr.App. 1987). The "one-leg stand test" and the "walk-and-turn test" simply measure "the suspect's balance, coordination, and/or mental agility, [which are] all factors notably impaired by intoxication." R. Jensen, et al., Advanced Drinking/DrivingLitigation in Alabama § II, at 126 (1986). The results of these tests do not prove absolutely that the subject is illegally intoxicated. Rather, the tests monitor whether the subject's coordination has been impaired by the consumption of alcohol.
Thus, the "one-leg stand test" and the "walk-and-turn test" are not novel scientific tests that require the application ofFrye and expert testimony. Cf., Dolvin, supra (forensic odontology test is in the nature of a physical comparison rather than a scientific test); Handley, supra (admissibility of dental witness's bite mark comparison does not depend on meeting the Frye standard).
The appellant also contends that the results of the Intoxilyzer 5000 test should not have been received into evidence because, under Frye and Prewitt, the state failed to establish the test's reliability and general acceptance in the particular scientific field in which it belongs.
"Tests conducted to determine the alcohol . . . content in a . . . breath sample have been recognized as having attained sufficient scientific acceptance to satisfy the . . .Frye test." McElroy's § 490.01(2) (footnote omitted). See also, § 32-5A-194, Code of Alabama 1975. See, e.g., Mayes v. City ofIrondale, 577 So.2d 556 (Ala.Cr.App. 1990); Stubstad v. City ofOrange Beach, 575 So.2d 1240 (Ala.Cr.App. 1991); Vizzina v.City of Birmingham, 533 So.2d 652 (Ala.Cr.App. 1987), aff'd,533 So.2d 658 (Ala. 1988).
Because the Intoxilyzer 5000 has been generally accepted as a valid test under § 32-5A-194 and the cases cited above, no Frye predicate is required for the admissibility of its results. "Despite [its] overall acceptance in the courts, however, a foundation must be laid to show that the particular test in question was conducted by an appropriate person and in a reliable way." McElroy's § 490.01(2) (footnote omitted). InEx parte Bush, 474 So.2d 168 (Ala. 1985), the Alabama Supreme Court explained the requisite foundation for the admissibility of test results indicating one's blood alcohol content pursuant to § 32-5A-194(a)(1), Code of Alabama 1975:
 "This predicate may be established by showing, first, that the law enforcement agency has adopted the particular form of testing that was in fact used. Second, there must be a showing that the test was performed according to methods approved by the State Board of Health. This may be proved by the introduction of the rules and regulations the officer followed while administering the test and the officer's testimony that he did, in fact, follow those rules when he administered the test in question. Third, there must be a showing that the person administering the test has a valid permit *Page 201 
issued by the State Board of Health for that purpose."[2]
Bush, 474 So.2d at 170 (citations omitted). See also, Woods v.State, 593 So.2d 103, 105 (Ala.Cr.App. 1991); Vizzina,533 So.2d at 654; McElroy's § 490.01(2).
After applying the Bush predicate to the facts of this case, we find that the state met the requirements for the admissibility of the Intoxilyzer 5000 test results. See, e.g.,Woods, supra.
The circuit court did not err by failing to require the state to prove the general acceptance of the Intoxilyzer 5000 underFrye and Prewitt and by receiving its results into evidence.
The circuit court did not err in denying the appellant's motion to suppress.
 II
The appellant next contends that the circuit court erred by denying his motion to dismiss, arguing that Summerdale Municipal Ordinance Number 123-89, upon which this prosecution is based, was passed in violation of § 11-45-8, Code of Alabama 1975.
However, Section 11-45-8 applies only to municipal ordinances that incorporate by reference technical and "other like codes"
published in books or pamphlets, such as those pertaining to the "construction, erection, alteration or improvement of buildings," "installation of plumbing," "fire prevention," "parks," "airports," and "housing." Section 11-45-8(c), Code of Alabama 1975.
Summerdale Municipal Ordinance Number 123-89, a certified copy of which is contained in the record, incorporates by reference all "laws of the State of Alabama now existing or hereafter enacted" that set out the elements of misdemeanor andfelony offenses, including § 32-5A-191, Code of Alabama 1975.
A municipal ordinance that incorporates by reference the criminal code of the State of Alabama is not within the scope of § 11-45-8, but, rather, falls under the scope of § 11-45-2, which governs the adoption of ordinances generally. See, e.g.,Jones v. Town of Courtland, 452 So.2d 1380 (Ala.Cr.App. 1984). See, generally, Sloss-Sheffield Steel Iron Co. v. Smith,175 Ala. 260, 57 So. 29 (1911). Thus, the circuit court did not err in denying the appellant's motion to dismiss.
 III
Finally, the appellant argues that the circuit judge committed reversible error when he refused four of her requested jury charges concerning her admission to drinking alcoholic beverages and the results of the Intoxilyzer 5000 test. The judge, however, fully instructed the jury on these two matters. As a matter of fact, he used the appellant's other written instructions in doing so, while refusing the ones in dispute because they were redundant. "A circuit judge may correctly refuse written requested jury charges if his oral charge covers the same legal principles." Blackmon v. State,574 So.2d 1037, 1041 (Ala.Cr.App. 1990). See also, § 12-16-13, Code of Alabama 1975; Rule 21.1, Ala.R.Crim.P.
The judgment in this case is affirmed.
AFFIRMED.
All the Judges concur.
[1] Under the "one-leg stand test," the subject is required "to stand on one leg for thirty seconds;" under the "walk-and-turn test," the subject must "balance heel-to-toe while listening to instructions, then take nine heel-to-toe steps along a line, turn in a specific and unfamiliar manner, and take nine steps back." 9 Am.Jur. Proof of Facts 3d 490-91 (1990).
[2] Section 32-5A-194 was amended in 1988 to substitute the Department of Forensic Sciences for the State Board of Health as the approving agency.