The appellant, Gene Arnold Scott, was convicted of driving under the influence of alcohol, in violation of §32-5A-191(a)(2), Code of Alabama 1975; of resisting arrest, in violation of § 13A-10-41, Code of Alabama 1975; of and escape in the third degree, in violation of § 13A-10-33, Code of Alabama 1975. He was sentenced to imprisonment for one year and one day in jail on the escape conviction, plus six months' imprisonment on the driving under the influence charge and six months' imprisonment on the resisting arrest conviction, the latter two terms to run consecutively.
The state's evidence tended to show that during the early morning hours of March 26, 1992, Deputy David Moody of the Madison County Sheriffs Department observed the appellant driving his car erratically. Moody twice observed the vehicle's two right tires leave the road. On the second occasion, the vehicle swerved back across the lane in which it was travelling and across the centerline. Moody then turned on his patrol car's blue lights and stopped the appellant. When Moody approached the appellant, he noticed the smell of alcohol.
According to the state's evidence, Moody then informed the appellant that he wanted to administer a field sobriety test, to which the appellant agreed. The first test was an "alphabet test," whereby Moody asked the appellant to state the letters in the alphabet from E to P. The appellant tried three times, but could not recite the letters, despite Moody's reciting the letters to him before each attempt. Moody then asked the appellant to perform the "finger count test," *Page 232 
whereby the appellant was to touch his thumb to each of his fingers, while counting his four fingers and then counting them backwards. The appellant tried this test twice, but failed both times. Moody testified that the appellant's speech was slurred and that he had trouble keeping his balance.
Deputy Moody testified that he then informed the appellant that he was placing him under arrest for driving under the influence of alcohol. The appellant then stated that he was "not going back to jail." Moody said that when he grabbed the appellant's left arm, the appellant tried to jerk away. Moody then put the appellant's arm behind his back, and forced him over the trunk of the car. As Moody reached for his handcuffs, the appellant pushed and kicked back, knocking Moody off balance. The appellant ran to his car while Moody radioed for assistance and then ran after the appellant. The appellant had jumped into his car. Moody testified that he reached into the window and tried to grab the appellant's keys but that the appellant was able to start the car and to drive away. Moody then got into his car and pursued the appellant.
Madison County Deputy Sheriff Albert Smith testified that a few minutes after Moody radioed for assistance, he spotted the appellant's wrecked car in a ditch. When he drove up to the scene, Deputy Smith testified that the appellant fled into the woods. Smith gave chase and was able to apprehend him. Smith testified that the appellant's speech was slurred, that his eyes were red, and that he had a strong odor of alcohol on his breath.
 I
The appellant first contends that the trial court erred in allowing Deputy Moody to testify as to the circumstances surrounding the field sobriety test that he administered to the appellant as well as to the results of the tests. He specifically argues that Moody's testimony concerning the "alphabet test" and the "finger count test" was immaterial and irrelevant. Further, he contends that the results of the "finger count test" were not admissible because the state failed to show any requisite scientific foundation for the test.
Field sobriety tests "monitor whether the subject's coordination has been impaired by the consumption of alcohol."Seewar v. Town of Summerdale, 601 So.2d 198, 200
(Ala.Cr.App. 1992).
 "These tests are intended to determine the suspect's balance, coordination, and/or mental agility, all factors notably impaired by intoxication. The walk-the-line test, for example, is intended to gauge the individual's balance, as are the modified-position-of-attention and leg-raise tests; the finger-to-nose is perhaps the most common of the coordination examinations; and alphabet recitation and reverse counting are indicative of attempts to test mental agility."
R. Jensen, et al., Advanced Drinking/Driving Litigation inAlabama § II, at 126 (1986).
The testimony concerning the field sobriety tests administered to the appellant by Deputy Moody was both relevant and material to this prosecution for driving under the influence and was therefore correctly received into evidence. C. Gamble, McElroy's Alabama Evidence § 21.01(6) (3d ed. 1977).
Further, it was not error to allow Moody's testimony concerning the field sobriety tests to be received into evidence absent a showing of the scientific basis for the tests. The field sobriety tests administered to the appellant are practical field tests administered by lay people, not novel scientific tests that, under Frye v. United States, 293 F. 1013
(D.C. Cir. 1923), and Prewitt v. State, 460 So.2d 296
(Ala.Cr.App. 1984), require experts to testify as to their reliability and general acceptance in the scientific community. The "alphabet" and "finger count" tests are comparable to the common sense "one-leg stand test" and the "walk-and-turn test" that were administered to the defendant in Seewar, supra. This court stated:
 "[T]he 'one-leg stand test' and the 'walk-and-turn test' are not novel scientific tests that require the application of Frye and expert testimony. Cf., Dolvin, [391 So.2d 677 (Ala. 1980)] (forensic odontology test is in the nature of a physical comparison rather than a scientific test); Handley, [515 So.2d 121 (Ala.Cr.App. 1987)] (admissibility *Page 233 
of dental witness's bite mark does not depend on meeting the Frye standard)."
Seewar, 601 So.2d at 200.
The trial court properly allowed Deputy Moody's testimony concerning the field sobriety tests.
 II
The appellant next contends that the trial court erred by allowing Deputy Moody to define "implied consent" for the jury because, he says, such testimony was hearsay. During Moody's testimony, the following occurred:
 "Q. What, if anything, happened once you all arrived at the Madison County Jail?
 "A. Once we arrived at the Madison County Jail, the subject — Deputy Yox met me there, . . . Deputy Paul Yox. He runs the Intoxilyzer 5000. It's a test that, as far as giving a test of your breath to see how much alcohol is in your body, he's —
 "Q. Did you request that Mr. Scott give a breath sample?
 "A. Yes, ma'am. I advised — Deputy Yox read the implied consent to the subject.
"Q. What is implied consent?
"A. It's giving —
 "[Defense Attorney]: Well, your Honor, I think I'm going to object to any hearsay or any testimony concerning what Deputy Yox said to this defendant as hearsay.
"THE COURT: Sustained.
 "Q. Were you present when the implied consent was —
 "A. Yes, ma'am. Any time the implied consent is read by another deputy, and a deputy such as me that's not certified with the Intoxilyzer 5000, we're present when the reading of the implied consent is done.
 "Q. Okay. And did the defendant take a breath test in your presence?
"A. No, ma'am. He verbally refused.
"Q. And you were there and you heard this?
"A. Yes, ma'am.
 "Q. Can you tell us, Deputy Moody, based on your training and experience, what is implied consent? What is that?
 "A. More or less, that's just you ask the subject if he wants to give us, you know, consent to a blood alcohol test, which —
 "[Defense Attorney]: Your Honor, I think I'm going to interpose the same objection. She's attempting to do, by other means, what the Court has already told her she can't do.
 "[District Attorney]: Your Honor, he can testify as to what he did, but he can't testify as to what someone else said that this defendant said, but he can testify as to what he did.
 "THE COURT: I understand. I overrule the objection.
 "Q. Can you tell us what it is without telling us what anyone said?
 "A. Implied consent is a statement that you read to a subject that you possibly think is under the influence of alcohol. It's a test given to determine the blood alcohol content in someone's body.
". . . .
 "Q. Is the person that operates the machine and the person that informs the subject of the implied consent, is that done in your presence?
"A. Yes, ma'am.
 "Q. Okay. So you were there when all of this took place?
"A. Yes, ma'am.
"Q. And Mr. Scott did refuse a breath test?
"A. Yes, ma'am."
Deputy Moody's testimony was not hearsay. Rather, his definition of "implied consent," which essentially was the procedures used to test someone with the Intoxilyzer machine, was based on his own knowledge and experience as a law enforcement officer. Moody did not attempt to testify as to what Deputy Yox told the appellant.
Further, the first objection to this testimony was sustained. Therefore there is no adverse ruling from which to appeal.Jones v. State, 600 So.2d 424 (Ala.Cr.App. 1992). The second objection came after the question was answered and no oral motion to exclude the answer was made. The appellant's *Page 234 
objection was untimely. An objection to a question must be made before an answer is given. Bird v. State, 594 So.2d 644
(Ala.Cr.App. 1990), rev'd on other grounds, 594 So.2d 676
(1991); Willingham v. State, 261 Ala. 454, 74 So.2d 241 (1954). An objection to a question, made after an answer is given, is not timely and will not preserve the issue for review. Woods v.State, 437 So.2d 636 (Ala.Cr.App. 1983); Flowers v. State,402 So.2d 1088 (Ala.Cr.App.), cert. denied, 402 So.2d 1094
(Ala. 1981). No error occurred here.
 III
Last, the appellant contends that there was insufficient evidence presented from which he could be convicted both of resisting arrest and of escape in the third degree. "A person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting a lawful arrest." § 13A-10-41, Code of Alabama 1975. Deputy Moody testified that when he told the appellant that he was placing him under arrest for driving under the influence of alcohol, the appellant stated that he was not going back to jail. Moody then grabbed the appellant's left arm and the appellant jerked away. This evidence, if believed by the jury, was sufficient to sustain the conviction for resisting arrest. "[I]t is not necessary that defendant used force or violence in obstructing the officer, only that he engaged in some conduct intending to prevent the officer from effecting a lawful arrest." Commentary to § 13A-10-41, Code of Alabama 1975.
"A person commits the offense of escape in the third degree if he escapes or attempts to escape from custody." §13A-10-33(a), Code of Alabama 1975. "Custody" is "[a] restraint or detention by a public servant pursuant to a lawful arrest." § 13A-10-30(b)(1), Code of Alabama 1975.
Here, according to the state's evidence, Deputy Moody told the appellant that he was placing him under arrest and grabbed the appellant's left arm. The appellant jerked his arm away and Moody then grabbed the appellant again forcing him over the trunk of the patrol car. When Deputy Moody had to forcibly subdue the appellant, the appellant was in custody, within the meaning of § 13A-10-30(b)(1), Code of Alabama 1975. "An individual is in custody even though he is lawfully physically restrained for the briefest period of time." Sanders v. State,512 So.2d 809, 811 (Ala.Cr.App. 1987). See also Vickers v.State, 547 So.2d 1191, 1193 (Ala. 1989). Thus, when the appellant broke away from Deputy Moody's hold on him and ran to his own car, he was escaping from custody. The testimony presented by the prosecution was sufficient to convict the appellant both of resisting arrest and of escape in the third degree. "Escape in the third degree and resisting arrest are separate offenses, and a defendant may be convicted of both offenses." Williams v. State, 591 So.2d 582, 583
(Ala.Cr.App. 1991).
For the foregoing reasons, the judgment in this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.