Thomas Eddie McReynolds was convicted of possession of marijuana in the second degree, assault in the third degree, and escape in the first degree. The Circuit Court of Baldwin County, Judge Charles C. Partin presiding, entered a judgment on a jury verdict and sentenced McReynolds to 10 years for the escape conviction, 1 year for the assault conviction, and 6 months for the possession of marijuana conviction. McReynolds appealed to the Court of Criminal Appeals, which affirmed his conviction without opinion. We granted certiorari review primarily to determine whether McReynolds, at the time he supposedly committed the offense of escape, was in "custody" within the meaning of the escape statute, Ala. Code 1975, §13A-10-31; the petition also raises an issue as to McReynolds's conviction for possession.
The facts are substantially as follows. Around 11:30 p.m. on July 18, 1992, Thomas Eddie McReynolds was pulled over by a City of Bay Minnette police officer and a Baldwin County sheriff's deputy for having a burned out tag light on his automobile. McReynolds did not have a driver's license in his possession, *Page 887 
so the police officer obtained from McReynolds certain information "to run in a computer." While the officer was completing his computer check, the sheriff's deputy administered a field sobriety test to determine if McReynolds was capable of operating a motor vehicle. McReynolds passed the field sobriety test. The deputy then asked McReynolds if he had any weapons or drugs in his automobile. McReynolds responded by saying that he did not and that the deputy could search the vehicle. The deputy then, pursuant to his policy, made a "pat down" search of McReynolds.
During this pat down search the deputy felt a bag in McReynolds's front pocket. When the deputy felt the bag, McReynolds grabbed the deputy's hand. The deputy then reached with his other hand into McReynolds's pocket, and when he did so he felt a bag between his fingers. As the deputy tried to pull the bag out of McReynolds's pocket, McReynolds fled.
The deputy pursued McReynolds for a short while but then fell to the ground; as he fell, he saw McReynolds discard something from his pocket. A bag was later found in the vicinity where McReynolds had discarded the item from his pocket. The bag contained two partially burned marijuana cigarettes.
When McReynolds fled, he was also pursued by the police officer in the patrol car and a third law enforcement agent who had arrived on the scene. The officer spotted McReynolds and began to pursue him on foot; he caught up with McReynolds and tackled him. The officer had McReynolds around the neck and told him "he was under arrest, to stop fighting." The struggle continued and at some point the officer's weapon was fired. The officer's finger was injured when it was caught in the slide mechanism of the weapon. The officer testified:
"Q. All right, sir. And what happened then?
 "A. He fell on the ground. I just took the weapon, put the safety back on, put it back in the holster and snapped it.
 "Q. Did you then try to complete your arrest procedure?
"A. Yes, sir."
When the officer got close to McReynolds, McReynolds threw the officer six or seven feet and fled again. The officer caught up to McReynolds four more times but could not subdue him. McReynolds got away.
Section 13A-10-31, Ala. Code 1975, states:
 "(a) A person commits the crime of escape in the first degree if:
 "(1) He employs physical force, a threat of physical force, a deadly weapon or a dangerous instrument in escaping or attempting to escape from custody. . . ."
Section 13A-10-30(b)(1) defines "custody" as:
 "A restraint or detention by a public servant pursuant to a lawful arrest, conviction or order of court, but does not include mere supervision of probation or parole, or constraint incidental to release on bail."
For McReynolds to be properly convicted of escape in the first degree, he must have been in custody.
McReynolds was not in "custody"; i.e., he was not being restrained or detained "pursuant to a lawful arrest."
The State argues that escape was proven at trial, relying upon language from Sanders v. State, 512 So.2d 809
(Ala.Crim.App. 1987). Sanders states that "An individual is in custody even though he is lawfully physically restrained for the briefest period of time." 512 So.2d at 811. Sanders involved a defendant who was placed under arrest and subsequently got away. Evidence set out in the Sanders opinion indicated that one of the officers who arrested Sanders "grabbed hold [of Sanders], and pulled him down to the floor." 512 So.2d at 811. It is unclear from the Sanders opinion, but it appears that this physical confrontation occurred after the arrest had been completed. The court in Sanders found that Sanders was in "custody" and therefore could be subject to the escape statute.
The facts of Sanders are quite different from the facts of the present case. The facts recited in Sanders indicate that the arrest of Sanders was complete. Thus, there is no real question that Sanders was in "detention by a public servant pursuant to a lawful arrest." *Page 888 
McReynolds was never told at the scene of the original traffic stop that he was under arrest. McReynolds passed the field sobriety test and offered to let the deputy search his automobile. The deputy then proceeded to search McReynolds, pursuant to his policy, for what he claimed to be safety reasons. At this point, the deputy felt the bag in McReynolds's pocket. A brief struggle ensued and McReynolds fled. The officer caught McReynolds, and a further struggle ensued. During this struggle, the officer told McReynolds that he was "under arrest" and told him to "stop fighting." At some point the officer's gun was fired and McReynolds and the officer became separated. The officer picked up his weapon, returned it to his holster, and attempted to "complete his arrest procedure." McReynolds fled again.
It is clear from these facts that a lawful arrest was never completed. Thus McReynolds was not being detained "by a public servant pursuant to a lawful arrest." The officer's very testimony that he intended to complete his arrest procedure mandates a finding that the arrest was not yet complete. The State's argument is apparently that the arrest need not be completed or that the arrest was completed merely upon the officer's telling McReynolds, during a struggle in which gunshots occurred, that he was under arrest. We disagree. Under this view, there would be absolutely no need for the distinct and separate offense of resisting arrest.
Section 13A-10-41, Ala. Code 1975, defines the offense of "resisting arrest":
 "(a) A person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting [sic] a lawful arrest of himself or another person."
The crime of resisting arrest ordinarily is not a lesser included offense of escape, because one does not necessarily have to fulfill all of the elements of resisting arrest to be guilty of escape. Williams v. State, 591 So.2d 582
(Ala.Crim.App. 1991). There is a distinction between "resisting arrest" and "escape from custody." One cannot escape from custody until one is in custody. Under the pertinent statute, §13A-10-30(b)(1), one is not in "custody" until he has been arrested, because the term "custody" is defined as a restraint or detention "pursuant to a lawful arrest." Resisting arrest does not require prior custody, but is an attempt to avoid custody (the very situation we have in this case). Thus, the arrest must be completed for a person to be in custody. The very fact that the legislature created the two separate and distinct offenses of "escape from custody" and "resisting arrest" requires this differentiation between the two offenses. To any degree that Sanders v. State, 512 So.2d 809
(Ala.Crim.App. 1987), intimates that the arrest need not be completed for the crime of escape to be committed, it is overruled.
As for the fact that while the struggle was taking place the officer told McReynolds that he was under arrest, we need not determine at exactly what point McReynolds would have been in custody. Surely the mere mentioning of the words "you are under arrest" are insufficient when they are uttered in the midst of a physical confrontation that includes gunfire. Moreover, in this case the officer's own testimony was that he had not yet completed his arrest procedure.
Though we do not reach the issue of when custody begins, we do seriously question the holding of the Court of Criminal Appeals in Scott v. State, 624 So.2d 230 (Ala.Crim.App. 1993), that a motorist was in custody merely upon an officer's telling the motorist that he was under arrest, grabbing the motorist's arm, and forcing the motorist over the trunk of the patrol car when a scuffle ensued.
This holding that a person is not in custody until he is arrested is in accord with the general law of custody for other purposes, such as the rules governing when Miranda warnings are required. The United States Supreme Court has held that a person is not in custody for purposes of giving Miranda
warnings while he is detained on the side of the road for a traffic stop. Berkemer v. McCarty, 468 U.S. 420,104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The Supreme Court has repeatedly held that a person is not in custody for Miranda purposes until there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. Stansbury v.California, *Page 889 
___ U.S. ___, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994);California v. Beheler, 463 U.S. 1121, 103 S.Ct. 3517,77 L.Ed.2d 1275 (1983). McReynolds submitted to a consensual search of his automobile. Pursuant to the consent, the officer searched McReynolds's person in a manner that at the very best amounted to a detention analogous to a Terry stop.[1] As theBerkemer case pointed out, a detainee at a Terry stop is not in custody for purposes of being entitled to a Miranda warning.Berkemer, 468 U.S. at 440, 104 S.Ct. at 3150. It necessarily follows that if a person is not in custody for purposes of receiving Miranda warnings he cannot be in custody for purposes of the escape statute.
McReynolds also argues in his petition that the state failed to properly associate him with the two marijuana cigarettes that were found in the bag. There was a question of fact as to whether McReynolds had dominion and control over the marijuana that was found in the bag. The jury determined that McReynolds did have dominion and control over the marijuana, and there is no basis for us to overturn that jury determination.
The conviction for possession of marijuana in the second degree is affirmed. The conviction for escape in the first degree is reversed and the cause is remanded to the Court of Criminal Appeals.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
SHORES, HOUSTON, KENNEDY, and INGRAM, JJ., concur.
MADDOX, J., concurs in part and dissents in part.
[1] We should not be understood, in any way, to be discussing the validity of the officer's actions in searching McReynolds's person when McReynolds apparently consented only to having his automobile searched. Nor should we be understood to be discussing whether a Terry stop was justified under the facts of this case. These issues were not raised in McReynolds's petition, and this Court will not address them.