{¶ 17} I respectfully dissent from the decision of the majority because I believe that a defendant's performance on certain field sobriety tests should be admissible at trial as lay evidence of a defendant's impairment.
{¶ 18} I believe that a distinction can be drawn between so-called psychomotor field sobriety tests, which assess a defendant's ability to perform simple physical tasks, and the horizontal gaze nystagmus test (HGN), which results in scientific evidence of intoxication. Strict compliance with NHTSA guidelines should be a prerequisite to the admission of evidence gleaned from the HGN, because the scientific nature of the test means that the results of a test performed incorrectly would potentially lead to unfair prejudice, confusion, and misleading the jury. However, with regards to the psychomotor tests, I do not feel that there should be a per se rule of exclusion.
{¶ 19} It is worth noting at the outset that intoxication or lack thereof is generally recognized by courts as being within the experience of lay witnesses. In fact, the Supreme Court of Ohio held that virtually any lay witness, without special qualifications, can testify as to whether an individual is or was intoxicated.[2] It is also well established that a police officer may provide lay testimony as to his or her opinion regarding a defendant's lack of sobriety.[3] Much of a defendant's performance on psychomotor field sobriety tests fall within the realm of the common perception of sobriety or inebriation. Accordingly, it seems reasonable to allow an officer to testify to a defendant's performance on these tests as a lay witness.
{¶ 20} Several courts have held that the one-legged test and the walk and turn tests are admissible as nonscientific evidence because they involve observations within the common understanding of ordinary citizens.[4] "There are objective components of the field sobriety exercises, which are commonly understood and easily determined, such as whether a foot is on a line or not."[5] In other words, performance of the psychomotor tests involves observations that parallel those that a layperson would make in assessing an individual's sobriety. Thus, a defendant's ability to perform such simple tasks is within the juror's common understanding. Therefore, the tests are probative and should be admitted provided that their value as evidence is not outweighed by the danger of unfair prejudice.
{¶ 21} I am cognizant of the Ohio State Supreme Court's case ofState v. Homan,[6] which opines that "[w]hen field sobriety testing is conducted in a manner that departs from established methods and procedures, the results are inherently unreliable."[7] However, I believe that the unreliable, and therefore inadmissible, results the psychomotor skills tests can be distinguished from a defendant's performance on the tests. For example, if the walk-and-turn test was not conducted in strict compliance with the National Highway Traffic Safety Administration (NHTSA) guidelines, the administering officer should not be permitted to take the stand as an expert witness and testify that he observed all of the indicators of drunkenness. However, he should be able to testify as a lay witness regarding the defendant's performance on the test. For instance, in the instant case, when requested to perform the walk-and-turn test, the defendant herein stated that he could not even perform such a test when sober. Such evidence should be admissible, subject to the rules of evidence, because it is not a result of the test. It goes without saying that any of the victim's performance that is let into evidence would be subjected to cross-examination, at which point the defense would be free to point out the inadequacies in the tests' administration.
{¶ 22} Finally, I also object to the trial court's characterization that individual trial courts are not suited to make determinations regarding the admissibility of evidence gleaned from field sobriety tests. Such a decision runs afoul of most other appellate rulings regarding evidentiary matters since, in most instances, the determinations regarding whether or not to admit evidence are left to the sound discretion of the court.[8] Although the majority apparently fears allowing precedent in this area to be set by individual trial courts, most evidentiary law evolves through discretionary rulings by lower courts that are then subjected to appellate review.
{¶ 23} The majority bemoans the possibility that case-by-case determinations in this area will fail to promote a "single, consistent, and fair approach to these cases." I, however, am reminded of the axiom that foolish consistency is the hobgoblin of small minds. By championing a single and consistent approach to these types of cases, the majority does not necessarily advance the cause of fairness. To the contrary, fairness in the realm of evidentiary rulings is often furthered by just the opposite of what the majority suggests: the ability of individual trial court judges to use their particular knowledge of an individual case and their singular expertise in trial procedure to determine the most just and legally sound ruling in a particular instance.
[2] City of Columbus v. Mullins (1954), 162 Ohio St. 419, 421.
[3] State v. Holland (Dec. 17, 1999), Portage App. No. 98-P-0066.
[4] State v. Meador (1996), 674 So.2d 826; Commonwealth v. Ragan
(1995), 438 Pa. Super. 505; Seewar v. Town of Summerdale (1992),601 So.2d 198; Nuyt v. Director of Revenue (1991), 814 S.W.2d 690; Statev. Gilbert (1988), 751 S.W.2d 454.
[5] Meador, 672 So.2d at 831.
[6] (2000) 89 Ohio St.3d 421.
[7] Id. at 424.
[8] Wightman, 86 Ohio St.3d at 437.