No. 21424.

PAUL RALPH GALLEGOS v. THE PEOPLE OF THE STATE OF COLORADO.

(411 P.2d 956)

Decided March 14, 1966.

380

H. R. HARWARD, FRANCES H. SCHALOW, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN E. BUSH, Assistant, GEORGE H. SIBLEY, Special Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

GALLEGOS was tried on a charge of felonious escape under C.R.S. 1963, 40-7-53, the germane part of which reads as follows:

"Any person after being found guilty of a felony by a court or jury or after pleading guilty to a felony who, while being held in a jail or while in the custody of any person lawfully having charge of him, escapes therefrom shall be deemed guilty of a felony and upon conviction shall be imprisoned in the state penitentiary for not less than one year nor more than ten years . . ."

After denying his motion for new trial, the trial court, pursuant to the jury verdict of guilty, sentenced Gallegos to the penitentiary for not less than three nor more than five years "to run consecutively with present sentence . . ." It is the entry of this judgment and sentence which is under attack in the present proceeding.

At the time of the events with which we are concerned Gallegos was serving a two to six-year sentence for larceny of a motor vehicle, a felony. On July 21, 1963, he was assigned to the prison gardens, a minimum

security area of the penitentiary. Sometime between two and three in the afternoon of that day, Gallegos left the prison gardens without permission. About an hour later he was apprehended some two miles distant, highly intoxicated.

Gallegos was first observed pulling himself out of a tailings pond into which he had fallen. The pond was part of the Cotter Corporation mill plant, and at the time several of the company's employees were on the premises. Upon extricating himself from the pond, Gallegos appeared to be a mobile mass of mud in which were set visible eyeballs. Some employees prevailed upon Gallegos to get into the shower bath provided for their use, and there they assisted him in removing the mud and slime from his person. It was then that they learned that Gallegos was clad in convict's clothes. On discovering his status, one of them called the police.

There was testimony to the effect that, while all this was taking place, Gallegos several times and in varying degrees of coherency spoke of his desire to see his sick wife, who, he said, was about to leave him. Gallegos made several ineffectual efforts to take leave of his captors but was subdued until the police arrived and took him back to the penitentiary.

Gallegos was described by one witness as being "falling down drunk" at this time and by others as being in a high state of inebriation.

The main defense urged at the trial was that Gallegos, an alcoholic, was so drunk that he was incapable of forming any intent to escape confinement, and, because his drunkenness was involuntary, he could not be guilty of the crime charged. This approach was met at the outset by citing C.R.S. 1963, 40-1-9, which provides:

"Drunkenness shall not be an excuse for any crime or misdemeanor, unless such drunkenness be occasioned by the fraud, contrivance or force of some person, for the purpose of causing the perpetration of an offense . . ."

In order to circumvent the effect of the above provision, Gallegos countered by citing C.R.S. 1963, 39-8-1, which in opposite part reads as follows:

". . . A defendant who does not . . . plead not guilty by reason of insanity shall not be permitted to rely on insanity as a defense to any accusation of a crime; *provided, that evidence of mental condition may be offered in a proper case as bearing upon the capacity of the accused to form the specific intent essential to constitute a crime.*" (Emphasis supplied.)
To like effect is Rule 11(b), Colo. R. Crim. P.

At this juncture Gallegos again met with an obstacle. It was assumed by both counsel and the court that the crime of escape was one that probably required general criminal intent, but certainly not "specific intent." Thus limited, it would not come within the wording of the above proviso. To surmount this Gallegos took recourse to two provisions of the Colorado Inchoate Crime Statute, C.R.S. 1963, 40-25-1 and 40-25-3:

"40-25-1. Criminal attempt. — (1) (a) A person is guilty of an attempt to commit a crime if, acting with the state of mind otherwise required for the commission of the crime, he:

(b) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or

(c) When causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing or with the belief that it will cause such a result, without further conduct on his part; or

(d) Purposely does or omits to do anything which, under the circumstances as he believes them to be, is a substantial step in a course of conduct planned to culminate in his commission of the crime. . . .

\* \* \*

"40-25-3. Defenses available — not available. —

. . .

(2) (a) It shall not be a defense to a conviction of the crime of attempt to commit a crime that:

. . .

(d) The crime attempted or intended was actually perpetrated by the accused."

Attempted escape, it was claimed, required a showing of "specific intent" and furnished the basis for the introduction of supporting evidence, despite the fact that the crime may have been consummated. Gallegos reinforced this thesis by resorting to Rule 31(c) of the Colorado Rules of Criminal Procedure, which reads as follows:

"The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense."

To further bolster this position, Gallegos asserted that, under the language of the Inchoate Crime Statute, an attempt is a lesser included offense in every crime by virtue of the statutory definition.

The conclusion of the entire argument is that, if Gallegos is entitled to introduce evidence on the theory of attempt, and if the crime of attempt involves a showing of specific intent, then, under the proviso of C.R.S. 1963, 39-8-1, evidence of mental condition may be introduced — to wit, of involuntary drunkenness — thus freeing him from the effect of C.R.S. 1963, 40-1-9.

The People strongly oppose the predications of Gallegos. They first point out that in Colorado a defense of involuntary drunkenness due to alcholoism is a claim of pathological intoxication which may be raised only on a plea of not guilty by reason of insanity at the time of the alleged commission of the crime, and that such a plea was not entered. Next they argue that the theory of attempt is not in the case because Rule 31(c) is permissive, giving the People an option of whether to charge the defendant therewith; and, further, that one

may not be charged with an attempt when the only evidence points to a completed crime. Here, they say, the only crime charged was complete when Gallegos left the prison confines and this in no way can be reduced to an attempt. It is urged that under the Inchoate Crime Statute an attempt is not a lesser included offense because, specific intent being an element of the crime of attempted escape and not of felonious escape, the elements of the two offenses differ.

The trial court, in its rulings, agreed with the position taken by the People and refused to admit in evidence testimony bearing on Gallegos' mental condition and to give the jury an alternative form of verdict on the theory of attempt. Also refused were Gallegos' tendered instructions on intent and insanity. The battle lines being thus drawn, we consider only those issues which appear necessary to our disposition of the case.

As above mentioned, the assumption of all concerned was that, as defined in the statute, felonious escape requires only general criminal intent. The position taken by the People was that, as the statute made no reference to intent as an element of the crime, it was not part of the offense.

The court, in its charge to the jury, stated in Instruction No. 8 "that the definition of escape is the actual voluntary departure from lawful custody and that the word voluntary as used herein means done by design of the Defendant." It was further charged that the statutory definition of a crime in Colorado "consists of a violation of a public law in the commission of which there shall be a union or joint operation of act and intention or criminal negligence."

Because no Colorado case appears to have construed our statute dealing with felonious escape, it is necessary at the outset to examine the law and some of the instructions given in order to determine whether the jury was accurately and fully informed.

In this respect we should put this case initially

in a proper perspective. The statute uses the term "escape" without defining it. Yet it had a meaning in the common law. This court has made plain that "where the statute does not define a crime, but merely gives to it its common law name or designation, resort must be had to the common law to ascertain what acts constitute the crime in question." *Koontz v. People,* 82 Colo. 589, 263 Pac. 19; see *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288.

■ Colorado has statutorily adopted the common law rule that a crime consists of the union of an act and intent. C.R.S. 1963, 40-1-1. This notion lies at the very foundation of the criminal law of civilized societies. See *Morissette v. United States, supra,* note 4; 1 Bishop, Criminal Law (9th ed. 1930) § 287; Sayre, *Public Welfare Offenses,* 33 Col. L. Rev. 55.

In 1843 the Connecticut Supreme Court of Errors had occasion to rule upon the matter of intent as related to the common law crime of escape. *Riley v. State,* 16 Conn. 47. The case dealt with "an information, filed in the county court, against Rufus Riley, charging, that he, on the 8th day of September, 1841, escaped from the gaol in Norwich," in that he walked away from the barnyard of the jailer's house. The report summarizes defendant counsel's argument assigning error as follows:

". . . [T]he departure in this case was not *with intent* to escape; which is essential to constitute the offense. . . . Here, it was not left to the jury to enquire with what intent he went away; but they were directed unqualifiedly upon the admitted facts, to find him guilty. This was evidently wrong, unless the monstrous proposition can be supported, that every departure without intent to escape, constitutes an indictable offense."

The majority of the Connecticut court responded by saying that the question did not fairly arise from the record. They did, however, take note of the advanced proposition:

"But it is said, that it does not appear, that the pris-

oner left with an intent to escape. *No doubt the intent is necessary to constitute the offense. . . .* No such question appears to have been made on the trial. Had it been, it was a proper subject for the determination of the jury." (Emphasis supplied.)

A minority of the court in dissent, believing the question of intent did fairly arise for consideration, echoed this sentiment:

". . . In order to constitute an escape, as well as other crime, a criminal intent is indispensable. The facts in this case conclusively negative a criminal intent. If they do not, they certainly afford no presumption of such intent. . . . The prisoner, at least on his trial, was entitled to the opinion of the jury as to the intent with which he left the prison. . . ."

Escape is made a crime by statute in many of the states. The language employed in these laws is not wholly uniform. Among these enactments there are those which omit any mention of criminal intent. Some courts, in construing such statutes, have held that it becomes a matter of indifference on the question of guilt whether the accused had a criminal intent. These courts have not considered the common law concerning intent in arriving at their determinations, but have cited as supporting their views cases construing regulatory measures. *State v. Clark,* 32 Nev. 145, 104 Pac. 593, Ann. Cas. 1912C; *Wiggins v. State,* 194 Ind. 118, 141 N.E. 56.

 We hold that the felony of escape has a necessary element the *intent* of the accused to evade the due course of justice. *People v. Weisman,* 280 N.Y. 385, 21 N.E.2d 362; *State v. Pace,* 192 N.C. 780, 136 S.E. 11. See also 30A C.J.S., *Escape,* § 6b. Hence, the trial court should have advised the jury that an escape is the voluntary departure from lawful custody by a prisoner with the intent to evade the due course of justice.

 It seems to us that the very word "escape" connotes an attitude of mind as well as an act. One does not "escape" without desire and intent to avoid

confinement. Because C.R.S. 1963, 40-1-1, adopts for Colorado the common law definition of what constitutes a crime and because this statutory provision must be read together with C.R.S. 1963, 40-7-53, in order to define the crime of escape, we hold that, as used in the latter provision, the crime was meant by the legislature to include that common law intent necessary for the commission of the offense — an intent to avoid the due course of justice. *Bradley v. People*, 8 Colo. 599, 604. See also *Coleman v. State*, 83 Tex. Cr. Rpts. 472, 204 S.W. 332; *People v. Wester*, 45 Cal. Rptr. 114; *People v. Weisman, supra; Riley v. Commonwealth, supra.*

Intent, of course, may be shown by inference from all the surrounding circumstances, if they are sufficient to prove this element beyond a reasonable doubt. C.R.S. 1963, 40-1-2. However, if the circumstances themselves are insufficient or if the defendant feels required to rebut facts or inferences from other evidence adduced at trial detrimental to his position, it is axiomatic that, this being material, his offer should be allowed in as evidence.

Viewing the instructions given by the trial court in the light of the above discussion, there was error in the charge as contained in the 8th instruction. As we have held that simple volition or design is insufficient to constitute the crime, the court was incorrect.

Should Gallegos have been permitted to introduce evidence of his state of intoxication? The crime charged in this case was escape, and, as we have defined it, an element of that offense is the actor's intent to escape. If that was not present, there was no crime. Gallegos was, therefore, entitled to introduce evidence to the effect that he was too drunk to form the state of mind required for the commission of the offense. See the instruction approved by this court in *McPhee v. People*, 105 Colo. 539, 100 P.2d 148.

Ordinarily, a defense of alcoholism or involuntary drunkenness is considered one of pathological in-

toxication, and, under C.R.S. 1963, 39-8-1, may be raised only on a plea of not guilty by reason of insanity at the time of the alleged commission of the crime. However, C.R.S. 1963, 39-8-1, contains an important proviso that qualifies this general rule in considerable degree. The proviso reads:

". . . [E]vidence of mental condition may be offered in a proper case as bearing upon the capacity of the accused to form the *specific* intent essential to constitute *a crime*." (Emphasis supplied.)

Does this case fall within the ambit of this clause? We think it does.

It is unnecessary to engulf our analysis in the abyss of what is "specific intent" as that term is used as one of art. Our rationale is simply that an intent to evade the due course of justice, an ingredient of the crime of escape, comes within the concept of the statute.

Our conclusion is, therefore, that the trial court erred in excluding evidence that Gallegos was an alcoholic, as he was entitled under the proviso of C.R.S. 1963, 39-8-1, to adduce evidence bearing upon his capacity to form the particular intent essential to constitute the crime charged, *i.e.*, felonious escape.

One minor matter remains to be considered. It was assigned as error that the court below erred in not admitting evidence to the effect that Gallegos was physically incapable of making good an escape. As there is irrefutable evidence that, whatever his state of mind might have been, he was found some two or three miles distant from his place of confinement, this contention is without merit and there was therefore no error committed.

The contention of Gallegos that he is being subjected to double punishment, and his arguments in support thereof, have been completely answered by our recent decision in *Silva v. People*, 158 Colo. 326, 407 P.2d 38. The holding there is applicable here, and hence the contention is without merit.

The judgment is reversed with directions to proceed further in a manner consistent with the views herein expressed.

MR. JUSTICE DAY not participating.

MR. JUSTICE SCHAUER concurs in the result only.