**Wesley MASSEY, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**No. 80SC339.**

Supreme Court of Colorado, En Banc.

Aug. 16, 1982.

J. Gregory Walta, Colorado State Public Defender, Michael Heher, Deputy State Public Defender, Denver, for petitioner.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for respondent.

DUBOFSKY, Justice.

We granted certiorari to consider the decision of the Court of Appeals in *People v.* *Massey*, (No. 77–1029, announced July 24, 1980) affirming the defendant Wesley Massey's convictions in Fremont County District Court of escape under section 18–8–208(2), C.R.S.1973 (1978 Repl. Vol. 8) and three counts of habitual criminal under section 16–13–101(2), C.R.S.1973 (1978 Repl. Vol. 8; current version in 1981 Supp.).[1] The defendant contends that evidence of his arrest should not have been admitted at trial, the trial court failed to properly instruct the jury on escape, the trial court erred in taking judicial notice that he was serving a sentence for a felony when he escaped, and statements of a prospective juror were grounds for mistrial. We disagree with the defendant's contentions and affirm the judgment of conviction.

On April 25, 1977, the defendant and four other inmates escaped from the Colorado State Penitentiary. On May 26, 1977, Omaha, Nebraska police officials notified the Colorado Springs police that a homicide had occurred in Omaha for which Mary Larson had been taken into custody, that the description of the homicide suspect matched the defendant's description, and that Larson and the defendant had stayed together previously in a residence at 1212 West Colorado Avenue in Colorado Springs.

Approximately four hours after receiving this information, three officers went to the Colorado Springs address where they discovered a car with a Nebraska license plate. A computer check of the license number indicated no irregularities.[2] The police showed photographs of the defendant to a tenant living in the upstairs apartment of the two-story structure. The tenant stated

---

1. We granted certiorari specifically to consider the defendant's contention that his habitual criminal convictions should be vacated because two of the predicate convictions occurred in the same proceeding and thus were not "separately brought and tried" within the meaning of the habitual criminal statute, section 16–13–101(2), C.R.S.1973 (1978 Repl.Vol. 8; current version in 1981 Supp.). We reject the defendant's contention on the basis of our recent decision in *Gimmy v. People*, 645 P.2d 262 (Colo.1982), which dealt with the identical issue. However, because we granted certiorari, we now briefly consider the defendant's other contentions.

2. After receiving the results of the computer check, one of the officers called his supervisor and asked him to check with the Nebraska authorities to determine if the car was stolen. Sometime after the defendant's arrest, the supervisor radioed back with the information that, according to the Nebraska police, the car was stolen, the owner had been kidnapped in Omaha and released in Brighton, Colorado, and the defendant was a suspect in the kidnapping.

that he might have seen someone who looked like the photographs around the downstairs apartment, but he wasn't sure. He also informed the police that the car with a Nebraska plate had arrived that same day. Two of the officers then entered the downstairs apartment through a kitchen window, found and arrested the defendant.

## I.

■ The defendant first contends that the Colorado Springs police officers lacked probable cause to justify a warrantless entry and search of the residence where he was staying, and therefore testimony concerning his arrest should have been suppressed as the fruit of the illegal entry and search. The defendant's principal objection to the arresting officer's testimony is that it was the only evidence of the fact of his escape. The district court found that the police had probable cause to enter the residence and arrest the defendant and allowed brief testimony by the arresting officer identifying the defendant as the man arrested and the address at which the arrest occurred.

We need not determine whether the police had probable cause to effect a warrantless arrest because even assuming that the arrest of the defendant was illegal, the trial court did not commit reversible error in allowing testimony as to the fact that the defendant had been arrested. Without deciding whether the admission of this testimony was error, there is sufficient evidence in the record, even in the absence of evidence that the defendant was arrested in Colorado Springs, to warrant the jury's conclusion that the defendant escaped from the penitentiary. Prison attendance records, as well as testimony by prison officials and an inmate who participated in the escape, established that the defendant left the prison.

## II.

■ Instruction No. 3 given to the jury defined the elements of the crime of escape as follows:

1. While being in custody or confinement under a sentence following a conviction of a felony other than a class one or class two felony,

2. Escaping from said custody or confinement,

3. With the specific intent to evade the due course of justice.

In *Gallegos v. People*, 159 Colo. 379, 411 P.2d 956 (1966), this Court held that although the term "escape" used in section 18–8–208 is not defined in the statute, the term has a well-recognized meaning at common law: "a voluntary departure from lawful custody by a prisoner with the intent to evade the due course of justice." 411 P.2d at 960. The defendant argues that Instruction No. 3 was improper because it did not explicitly inform the jury that it had to find that the defendant's escape was voluntary and that his confinement in the state penitentiary was lawful.

The defendant did not object to the instruction at trial or in his new trial motion. Thus, reversal on this ground is not appropriate unless plain error is shown. *Ruark v. People*, 164 Colo. 257, 434 P.2d 124, *cert. denied* 390 U.S. 1044, 88 S.Ct. 1644, 20 L.Ed.2d 306 (1967); Crim.P. 30, 52. We find no plain error in the jury instructions. Instruction No. 5 informed the jury that commission of a crime requires the joint operation of an act forbidden by law and a culpable mental state. The instruction identified the culpable mental state as "with specific intent" defined as follows:

Specific intent is a state of mind voluntarily and willfully to do or perform an act which will effect a certain result.

This definition instructs the jury as to the element of voluntariness required under *Gallegos v. People, supra.*

Instruction No. 3 informed the jury that one element of the crime of escape is that the defendant must have been "in custody or confinement under a sentence following a conviction of a felony other than a class one or class two felony...." The prosecution introduced evidence of the defendant's prior convictions, and Instruction No. 9 admonished the jury that this evidence was

admitted for the limited purpose "of showing the defendant was lawfully confined. . . ." It is clear from an examination of the instructions as a whole that they adequately instructed the jury on the voluntariness of the escape and the lawfulness of the confinement. *See People v. Mattas*, 645 P.2d 254, 258 (Colo.1982).

### III.

The defendant also contends that the trial court erred by taking judicial notice that the mittimus under which he was confined concerned crimes which were felonies other than class 1 or 2 felonies and by not instructing the jury about the definition of felony or the classification scheme for felonies under Colorado law. Because of this, the defendant asserts, one element of the offense of escape was not considered by the jury, depriving him of a fair trial.

■ Section 18–8–208(2), C.R.S.1973 (1981 Supp.) provides:

A person commits a class 3 felony if, while being in custody or confinement under a sentence following conviction of a felony other than a class 1 or class 2 felony, he knowingly escapes from said custody or confinement.

A conviction under section 18–8–208 requires evidence that the defendant was convicted of and is being held for a felony. *People v. Velarde*, 630 P.2d 100 (Colo.App. 1981). *See People v. Austin*, 162 Colo. 10, 424 P.2d 113 (1967); *Schwickrath v. People*, 159 Colo. 390, 411 P.2d 961 (1966). In addition, since the classification of the offense of escape is determined by the nature of the underlying crime for which the defendant was held, it is essential that the specific offense upon which the confinement is premised be shown. *People v. Velarde, supra.* *See People v. Wines*, 43 Colo.App. 8, 597 P.2d 1056 (1979); *People v. Bulmer*, 37 Colo.App. 82, 544 P.2d 993 (1975).

The prosecution introduced the mittimus from the district court and other evidence to establish the requisite conviction for an offense other than a class 1 or 2 felony. The trial court took judicial notice of the fact that the mittimus under which the defendant had been confined listed a conviction for a felony other than class 1 or 2. The court instructed the jury that evidence of the defendant's prior convictions was to be considered as evidence of lawful confinement, but since the court had determined the classification of the past conviction, it did not instruct the jury on the definition of felony or the classes of felonies.

■ The court's determination did not invade the province of the jury. C.R.E. 201 provides that a court may take judicial notice of a fact which is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The classification of the defendant's past offense was a question of law, and the court is justified in taking judicial notice when the facts upon which the legal conclusion is based are unchallenged. *Cf. United States v. Morris*, 451 F.2d 969 (8th Cir. 1971) (judicial notice may be taken that custody from which the defendant escaped was "federal custody"). The fact that confinement following conviction of a felony other than class 1 or 2 is an element of the offense charged does not preclude the court's taking judicial notice of the classification of the past offense. *See Lemon v. State*, 522 P.2d 160, 163, n. 5 (Alaska 1974).

### IV.

The defendant also contends that it was error for the district court to deny his motion for a mistrial made when a prospective juror explained her knowledge of the case in the presence of other prospective jurors.

Prior to *voir dire* of the jury panel, the defendant moved for an individual, *in camera* examination of each prospective juror. The court denied the motion. During *voir dire*, a prospective juror, whose husband was employed as a guard at the penitentiary where the defendant was confined, was asked if she knew anything about the case. She replied,

Only that it [the escape] happened and I was aware when he was returned to the penitentiary that day because somehow

or other my husband saw and talked to him and he said he had lost 20 pounds during his absence. That was the extent of the conversation.

The defendant objected and moved for a mistrial. The court instructed the jury panel to disregard the statement, excused the juror for cause and denied the motion for a mistrial.

■ A mistrial is the most drastic remedy for prejudicial conduct. *People v. Lowe*, 184 Colo. 182, 519 P.2d 344 (1974). The grant or denial of a mistrial is within the sound discretion of the trial court and will not be disturbed on appeal absent a gross abuse of discretion prejudicing the defendant. *Hamrick v. People*, 624 P.2d 1320 (Colo.1981); *People v. Sexton*, 192 Colo. 81, 555 P.2d 1151 (1976); *People v. Baca*, Colo. App., 610 P.2d 1083 (1980).

■ The facts of this case do not show sufficient prejudice to the defendant to support a finding that the court abused its discretion in not granting a mistrial. The defendant presented no evidence refuting the fact of his absence from the penitentiary and witnesses called by the defendant all testified about the circumstances of his escape. In light of the evidence that the defendant escaped, the prospective juror's very general statement attesting to her knowledge of the defendant's absence from prison was not so prejudicial as to justify a mistrial. Moreover, immediately after the prospective juror's statement, the trial court instructed the panel to disregard her words. In circumstances such as these, a curative instruction is sufficient. *See People v. Saars*, 196 Colo. 294, 584 P.2d 622 (1978).

Judgment affirmed.

LEE, J., does not participate.