### The PEOPLE of the State of Colorado, Petitioner,

### v.

### Bryan Sidney THORNTON, Respondent.

### No. 95SC35.

Supreme Court of Colorado, En Banc.

Dec. 16, 1996.

Rehearing Denied Jan. 13, 1997.

G.F. Sandstrom, District Attorney, Tenth Judicial District, Patrick K. Avalos, Supervising Deputy District Attorney, Pueblo, for Petitioner.

David F. Vela, Colorado State Public Defender, Victor I. Reyes, Deputy State Public Defender, Pueblo, for Respondent.

Justice LOHR delivered the Opinion of the Court.

The defendant, Bryan Sidney Thornton, was charged with one count of felony escape based on flight from police officers during the course of efforts to arrest him on a felony warrant. At the conclusion of a preliminary hearing, the trial court dismissed the escape charge for lack of probable cause, ruling that the prosecution failed to establish that the defendant was "in custody or confinement" before he fled, as required by the escape

statute, section 18–8–208(3), 8B C.R.S. (1986). On appeal by the prosecution, the Colorado Court of Appeals affirmed the dismissal. *People v. Thornton,* 902 P.2d 381, 383 (Colo.App.1994). We granted certiorari to determine whether the court of appeals correctly defined the phrase "in custody or confinement" as it is used in section 18–8–208(3), 8B C.R.S. (1986).[1] We now hold that the court of appeals adopted an erroneous interpretation of the statute, and that under a correct construction, the prosecution established probable cause to believe that the defendant was "in custody" before fleeing. We therefore reverse the judgment of the court of appeals and return the case to that court with directions to remand the case to the trial court for reinstatement of the escape charge.

## I.

On December 10, 1993, Officers Mark Thalhamer and Eric Bravo of the Pueblo, Colorado, Police Department were on routine patrol when they spotted the defendant walking down the street. The officers recognized the defendant and knew of an outstanding felony warrant for his arrest.[2] Accordingly, the officers approached the defendant, advised him of the outstanding warrant, and directed him to walk to the nearest parked car and place his hands on it.[3] In response to the defendant's inquiry as to why he was being arrested, Officer Bravo again advised the defendant of the outstanding warrant and told him to "[j]ust go over to the car."

The defendant complied with the officer's instructions. However, while Officer Bravo conducted a pat down search of the defendant, the defendant began moving as if "he was kind of uneasy," and Officer Bravo warned him not to try to run. Officer Bravo then reached up for the defendant's right

---

1. The issue presented for certiorari review is: Whether the court of appeals erred in ruling that actual application of physical force or restraint is a prerequisite to being "in custody or confinement" for purposes of C.R.S. 18–8–208(3).

2. The outstanding warrant was based on a felony charge of menacing with a deadly weapon, § 18–3–206, 8B C.R.S. (1986).

3. The description of the events that occurred on December 10, 1993, is derived from the testimony of Officer Thalhamer at the preliminary hearing held on January 12, 1994. Neither the defendant nor Officer Bravo testified at that hearing.

hand to place him in handcuffs, but the defendant "broke and ran" from the officers. The officers pursued the defendant and apprehended him after a chase of less than one block.

Based on the foregoing events, the defendant was charged by information in Pueblo County District Court on December 17, 1993, with one count of escape, a class four felony, pursuant to section 18–8–203(3), 8B C.R.S. (1986).[4] The trial court held a preliminary hearing on January 12, 1994. Officer Thalhamer testified as a witness for the prosecution, and neither party presented additional evidence. Defense counsel then argued that the prosecution failed to establish probable cause as to one of the elements of the offense. Specifically, defense counsel maintained that the defendant was never "in custody or confinement" as required by section 18–8–208(3), 8B C.R.S. (1986), and therefore no probable cause existed to support the escape charge. At the close of the hearing, the trial court took the matter under advisement and granted counsel the opportunity to submit authority on the custody or confinement issue. On January 31, 1994, the court issued an oral ruling dismissing the escape charge on the basis of lack of probable cause and noted the possibility that a charge of resisting arrest might be more appropriate. The defendant agreed to accept service on a new charge, and the court granted the prosecution until February 7, 1994, to serve the defendant with any new charge. On February 7, 1994, the prosecution informed the court that it intended to appeal the dismissal of the escape charge. The court then advised counsel that it would reduce the dismissal order to writing to facilitate review. The court issued a written order on February 22, 1994.

In its written order, the trial court noted that the term "in custody" is not defined statutorily for the purpose of section 18–8–208(3), 8B C.R.S. (1986). Accordingly, the court reviewed this court's case law on the issue of custody in contexts other than escape. The trial court concluded that the custody definition set forth in *People v. Armstrong*, 720 P.2d 165, 168–69 (Colo.1986), decided in the context of the statute governing assault on a peace officer, also applied in the present case. As a prerequisite to a "custody" determination, the trial court interpreted *Armstrong* to require sufficient physical restraint of a suspect by a police officer to establish physical control and thereby to effect an arrest. Because it determined that the officers in this case did not establish physical control over the defendant before he ran away, the court held that the defendant was not in custody and therefore could not be found guilty of escape.

The prosecution appealed the trial court's ruling, contending that the definition of custody in the Colorado Code of Criminal Procedure, § 16–1–104(9), 8A C.R.S. (1986),[5] applies to the escape statute and that such definition requires neither application of physical force or restraint nor a formal arrest. The court of appeals held that even if section 16–1–104(9) applied, the custody definition in section 16–1–104(9) contemplates a physical restraint. The court held that *Armstrong* and the cases that have followed it bolstered a conclusion that a "custody" determination requires physical restraint for the purposes of section 18–8–208(3), 8B C.R.S. (1986). *Thornton*, 902 P.2d at 383. Therefore, the court of appeals affirmed the trial court's dismissal of the escape charge. *Id.*

## II.

The issue before us is whether the trial court correctly ruled that the prosecution failed to establish probable cause to believe that the defendant was "in custody or confinement" within the meaning of the escape

---

**4.** § 18–8–208(3) provides:
   A person commits a class 4 felony if, while being in custody or confinement and held for or charged with but not convicted of a felony, he knowingly escapes from said custody or confinement.
   § 18–8–208(3), 8B C.R.S. (1986). For convenience, in this opinion we sometimes refer to § 18–8–208(3), 8B C.R.S. (1986), as the "escape

statute." Section 18–8–208 enumerates several different classes of escape offenses, but only the class 4 felony prescribed in subsection (3) is at issue here.

**5.** Section 16–1–104(9) defines "custody" as "the restraint of a person's freedom in any significant way." § 16–1–104(9), 8A C.R.S. (1986).

statute, section 18–8–208(3), 8B C.R.S. (1986), at the time he fled from the police officers. To resolve this issue, we first must determine the proper construction of the term "in custody or confinement" as it appears in the escape statute. Section 18–8–208(3) provides:

> A person commits a class 4 felony if, while being in custody or confinement and held for or charged with but not convicted of a felony, he knowingly escapes from said custody or confinement.

§ 18–8–208(3), 8B C.R.S. (1986). Neither the phrase "in custody or confinement" nor the term "escapes" is defined in the escape statute or elsewhere in the Colorado Criminal Code. See §§ 18–1–101 to –22–103, 8B C.R.S. (1986 & 1996 Supp.) (Colorado Criminal Code).

We have held that "[t]he fundamental purpose of the [escape] statute is to prevent the evasion of the due course of justice." *People v. Velarde*, 657 P.2d 953, 955 (Colo.1983). At common law, "escape" had a well-recognized meaning as a " 'voluntary departure from lawful custody by a prisoner with the intent to evade the due course of justice.' " *Massey v. People*, 649 P.2d 1070, 1072 (Colo.1982) (quoting *Gallegos v. People*, 159 Colo. 379, 387, 411 P.2d 956, 960 (1966)). Prior to the enactment of the Colorado Criminal Code in 1971, we ascribed the common law meaning to the term "escape" in the absence of a statutory definition. *Gallegos*, 159 Colo. at 386–88, 411 P.2d at 959.

In amending the Colorado Criminal Code in 1977 and 1978, however, the legislature specifically adopted a general intent standard, i.e., the mental state of "knowingly," with respect to escape offenses instead of the specific intent contained in the common law definition, i.e., the intent to evade the due course of justice. Ch. 224, sec. 43, § 18–8–208, 1977 Colo. Sess. Laws 959, 966; Ch. 44, sec. 50, § 18–8–208(8), 1978 Colo. Sess. Laws 252, 263; *People v. Williams*, 199 Colo. 515, 518–19, 611 P.2d 973, 975 (1980). All classes of escape, as currently defined and codified at section 18–8–208, 8A C.R.S. (1986 & 1996 Supp.), continue to be general intent offenses. The statute has been applied to persons who have fled from confinement in prison, *Massey*, 649 P.2d at 1071, in county jail, *Williams*, 199 Colo. at 516–17, 611 P.2d at 975, in a hospital while under custodial arrest, *Velarde* 657 P.2d at 954, in the state hospital while committed as a result of an insanity adjudication, *People v. Giles*, 662 P.2d 1073, 1074 (Colo.1983), and in a penitentiary work release facility, *People v. Lucero*, 654 P.2d 835, 836 (Colo.1982). We have not had occasion until now to address the circumstances under which flight from a police officer violates the escape statute, when the flight occurs outside of a confinement facility context.

It is clear that the legislature has not limited "escape" to situations where a person committed to a confinement facility, such as a prison or a jail, flees from confinement. The statute employs the disjunctive "or," specifying as one element of the crime that the person be "in custody *or* confinement." § 18–8–208(3), 8B C.R.S. (1986) (emphasis added). In the present case, the police officers stopped the defendant on the street. The defendant was not in confinement. The pertinent question is whether he was in custody.

We addressed an analogous question in *People v. Armstrong*, 720 P.2d 165 (Colo. 1986). There, the defendant was charged with two counts of second degree assault on a peace officer under section 18–3–203(1)(f), 8 C.R.S. (1978 & 1985 Supp.). The trial court dismissed those charges on the basis that the second degree assault statute prescribed more severe sanctions than the resisting arrest statute, section 18–8–103, 8 C.R.S. (1978), for the same criminal conduct in violation of equal protection guarantees. *Armstrong*, 720 P.2d at 167.

We prefaced our analysis in *Armstrong* by reviewing the applicable statutory provisions. *Id.* at 167–68. The relevant part of the second degree assault statute defined the offense to apply to situations where, "[w]hile lawfully confined or in custody, [the accused person] violently applies physical force against the person of a peace officer or fireman engaged in the performance of his duties." *Id.* at 167 (citing § 18–3–203(1)(f), 8 C.R.S. (1978 & 1985 Supp.)). The resisting arrest statute stated:

A person commits resisting arrest if he knowingly prevents or attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest of the actor or another, by: (a) Using or threatening to use physical force or violence against the peace officer or another.

*Armstrong*, 720 P.2d at 167 (quoting § 18–8–103(1), 8 C.R.S. (1978)).

We held first that the phrase " 'while lawfully confined or in custody,' " by the "use of the disjunctive, 'or,' makes it plain that section 18–3–203(1)(f) applies to field arrest situations as well as to detention facilities." *Armstrong*, 720 P.2d at 167 (quoting § 18–3–203(1)(f), 8 C.R.S. (1978 & 1985 Supp.)). We recognized that "[s]tatutes prescribing different sanctions for what ostensibly might be different acts, but offering no rational standard for distinguishing such different acts for purposes of disparate punishment, [ ] contravene the equal protection guarantees of the Colorado Constitution." *Id.* at 168 (citing *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975)). To differentiate between the crimes of second degree assault and resisting arrest, we identified the triggering event for a "custody" determination in the context of the second degree assault statute. We held that when a person subject to arrest resists that arrest, the person is "in custody" for the purpose of section 18–3–203(1)(f) only when an arrest has been "effected." *Armstrong*, 720 P.2d at 169. To effect the arrest, the officer "must apply a level of physical control over the person resisting arrest so as to reasonably ensure that the person does not leave." *Id.* Up until the point when the arrest is effected, a person using physical violence against a peace officer to avoid arrest commits resisting arrest; after the arrest is effected, a person employing such force against a peace officer commits second degree assault. The two crimes are mutually

exclusive, and whether the defendant's use of force precedes or follows the effectuation of the arrest dictates the nature of the offense. *Id.* We followed *Armstrong* and held it controlling in *Wieder v. People*, 722 P.2d 396, 398–99 (Colo.1986). *Accord People v. Ortega*, 899 P.2d 236, 237–38 (Colo.App.1994) (level of physical control, not "formal arrest," determines whether a defendant is "in custody" under section 18–3–203(1)(f)).

A teaching of *Armstrong* is that custody connotes physical control. We therefore hold that effecting an arrest, in the sense of establishing physical control over the arrestee, is required before a person is "in custody" for the purposes of the escape statute. In *Armstrong* we described the physical control necessary to a determination that a person is "in custody" as the level that will reasonably ensure that the person does not leave. *Armstrong*, 720 P.2d at 169. However, physical control, in a situation not involving resistance to arrest, does not necessarily require physical restraint through application of force. A suspect who submits to police direction without resistance still may be subject to the physical control of an officer. The officer's presence and the suspect's submission in concert may be sufficient to establish the assurance, requisite to a determination of physical control, that the suspect will not leave.[6]

The prosecution argues, however, that in the absence of a definition of "custody" in the escape statute or elsewhere in the Colorado Criminal Code, we should look for guidance to the definition in the Colorado Code of Criminal Procedure, Title 16, 8A C.R.S. (1986). Section 16–1–104(9), 8A C.R.S. (1986), provides that " '[c]ustody' means the restraint of a person's freedom in any significant way." Section 16–1–104(1), however, specifically provides that the defini-

---

**6.** The Supreme Judicial Court of Maine explained:

"It is true that merely saying to a person—you are under arrest—without an effective physical restraint of the person concomitant with the proclamation will not constitute an arrest of the person. On the other hand, these same words—you are under arrest—are sufficient to effect an arrest of the person, if the person to be arrested is in the presence and

power of the officer and in consequence of the communication submits to the officer's restraint. In this latter instance, however, if, instead of submitting, the person flees from the officer, there would be no arrest until the officer had laid hold of the person."

*State v. Daley*, 411 A.2d 410, 412 (Me.1980) (quoting *State v. Powers*, 386 A.2d 721, 727 (Me. 1978)).

tions in section 16–1–104 are for use in the Colorado Code of Criminal Procedure. § 16–1–104(1), 8A C.R.S. (1986). Section 16–1–105(1), 8A C.R.S. (1986), recognizes that, even within that Code, the definitions are not applicable if "a particular context clearly requires a different meaning." *Accord* § 16–1–104(1), 8A C.R.S. (1986). Furthermore, although words and phrases used in the Colorado Criminal Code are applicable to the Colorado Code of Criminal Procedure unless the context clearly requires another meaning, § 16–1–105(2), 8A C.R.S. (1986), the statutes contain no reciprocal provision making the Code of Criminal Procedure definitions applicable to the Colorado Criminal Code.

More importantly, the context of section 18–8–208(3), the escape statute, reflects that it does not apply to temporary detentions such as those included within the scope of section 16–1–104(9). This is evidenced by the statutory requirement that the person be *"held for or charged with* but not convicted of a felony." § 18–8–208(3), 8B C.R.S. (1986) (emphasis added). We therefore reject the prosecution's argument that the definition of "custody" in section 16–1–104(9) applies to the escape statute.[7]

Cases from other jurisdictions support construction of an escape statute to require the degree and continuity of physical control inherent in effecting an arrest to satisfy the "in custody" element of an escape statute. Although the statutory frameworks and precise holdings vary, a common theme is that effecting an arrest, in the sense of establishing physical control for a continuing detention, is the point at which the potential for an escape charge begins and the potential for a less serious charge such as resisting arrest ends. *See, e.g., Ex parte McReynolds,* 662 So.2d 886, 888 (Ala.1994) (words of arrest, alone, do not establish "custody" so as to support a charge of escape from custody); *State v. Sanchez,* 145 Ariz. 313, 701 P.2d 571, 573 (1985) (actual restraint or submission to custody is necessary to support a charge of escape from custody); *People v. Kosyla,* 143 Ill.App.3d 937, 98 Ill.Dec. 823, 832–33, 494 N.E.2d 945, 954–55 (1986) (escape charge not

supported in absence of actual restraint or submission); *State v. Logan,* 8 Kan.App.2d 232, 654 P.2d 492, 494–95 (1982) (authority and intent to detain suspect not sufficient to support escape charge in absence of restraint or submission where suspect evaded custody by leaving station house); *State v. Daley,* 411 A.2d 410, 411–12 (Me.1980) (the custody required to support an escape charge requires physical seizure by arresting officer or submission to officer's control); *People v. Caffey,* 134 A.D.2d 923, 521 N.Y.S.2d 937, 938 (1987) (custody necessary to support escape charge not established where defendant avoided officer's grasp during attempted arrest); *State v. Blaine,* 133 Vt. 345, 341 A.2d 16, 20 (1975) (escape charge not supported absent restraint or submission necessary to effect arrest, thereby subjecting suspect to custody).

■ For the foregoing reasons, we hold that for a suspect to be "in custody" for the purpose of section 18–8–208(3), 8A C.R.S. (1986), an officer must have effected the suspect's arrest by establishing physical control of the suspect sufficient to provide reasonable assurance that the suspect will not leave. Physical control can be established by physical restraint or by the suspect's submission to control. Section 18–8–208(3) also requires that prior to flight, a suspect must be "held for or charged with but not convicted of a felony" in order to be guilty of escape.

### III.

We turn now to the issue of whether the evidence presented at the preliminary hearing established probable cause to believe the defendant committed the crime of escape under section 18–8–208(3) as properly construed. We first set forth the standards applicable to preliminary hearings and then apply those standards to the evidence as presented.

■ A preliminary hearing serves the limited purpose of determining whether " 'there is probable cause to believe that an offense has been committed and that the person charged committed it.' " *People v. District Court (District Court I),* 803 P.2d

---

7. For these same reasons, we disapprove the contrary holding of *People v. Atkins,* 885 P.2d

243 (Colo.App.1994), upon which the prosecution relies.

193, 196 (Colo.1990) (quoting § 16–1–104(14), 8A C.R.S. (1986)); *accord, e.g., Harris v. District Court* (*District Court II*), 843 P.2d 1316, 1319 (Colo.1993). "The standard for finding probable cause requires only that the prosecution present evidence sufficient to induce a person of ordinary prudence and caution to entertain a reasonable belief that the defendant committed the crime." *District Court I,* 803 P.2d at 196; *accord, e.g., Abbott v. County Court,* 886 P.2d 730, 732 (Colo. 1994). The prosecution at a preliminary hearing is not required to produce evidence sufficient to support a conviction of the person charged. *People v. Stewart,* 739 P.2d 854, 855 (Colo.1987). Furthermore, "[b]ecause the preliminary hearing is a screening device, and not a mini-trial," the trial court must view the evidence presented at the preliminary hearing in the light most favorable to the prosecution. *District Court I,* 803 P.2d at 196.

█ In the present case, the record establishes probable cause to believe that the defendant was in custody before fleeing. The officers approached the defendant on the street, advised him of an outstanding felony warrant for his arrest, and directed him to walk to the nearest parked car and place his hands on it. The defendant complied. This was sufficient to establish probable cause to believe the defendant submitted to the physical control of the officers and that an arrest had therefore been effected. In addition, the officers took the defendant into custody to hold him for a felony, based on an outstanding arrest warrant. Although the defendant thereafter broke and ran, this occurred after initial submission to the officer's physical control. We therefore hold that probable cause existed to believe that before he fled, the defendant was in custody for the purpose of the escape statute, section 18–8–208(3), 8B C.R.S. (1986), and was being held for a felony. The trial court and the court of appeals applied the wrong standard in holding that an actual application of physical force or restraint is necessary to a conclusion that a suspect is "in custody" for the purpose of section 18–8–208(3).

IV.

We reverse the judgment of the Colorado Court of Appeals and return the case to that court with directions to remand the case to the trial court for reinstatement of the escape charge.