2013 COA 122

**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Robert Charles JOHNSON,
Defendant–Appellant.**

**Court of Appeals No. 11CA2366**

Colorado Court of Appeals,
Div. VII.

Announced August 15, 2013

John W. Suthers, Attorney General, Jillian J. Price, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Law Office of Suzan Trinh Almony, Suzan Trinh Almony, Broomfield, Colorado, for Defendant–Appellant

Opinion by JUDGE TERRY

¶ 1 Defendant, Robert Charles Johnson, appeals the judgment of conviction entered on a jury verdict finding him guilty of escape. We affirm.

¶ 2 As an issue of first impression, we conclude that escape under section 18–8–208, C.R.S.2012, is a "continuing offense," and that such an escape does not terminate until the defendant is returned to custody in Colorado.

## I. Background

¶ 3 In 1973, defendant was convicted of second degree murder and sent to prison. He escaped two years later and evaded authorities until 2007, when he was arrested and returned to custody in Colorado.

¶ 4 Defendant moved to dismiss the charges against him, arguing that his constitutional right to a speedy trial was violated. The trial court dismissed the case on those grounds, but a division of this court reversed. *People v. Johnson,* 2010 WL 3036495 (Colo. App. No. 09CA0127, Aug. 5, 2010) (not published pursuant to C.A.R. 35(f)).

¶ 5 On remand, and following a jury trial, defendant was convicted of escape and sentenced to sixteen years in prison.

## II.   Statute of Limitations

¶ 6 Defendant first contends that the statute of limitations for escape bars his prosecution.  We disagree.

### A.   Standard of Review

¶ 7 We review de novo issues concerning application of a statute of limitations. *See People v. McKinney*, 99 P.3d 1038, 1041 (Colo.2004).   When interpreting a statute, our primary purpose is to ascertain and give effect to the intent of the General Assembly. *People v. Daniels*, 240 P.3d 409, 411 (Colo. App.2009).  We first look to the language of the statute and give words their plain and ordinary meaning.  *People v. Jaramillo*, 183 P.3d 665, 671 (Colo.App.2008).

¶ 8 "[W]e must interpret a statute in a way that best effectuates the purpose of the legislative scheme."  *Daniels*, 240 P.3d at 411. Thus, we read and consider the statute as a whole, interpreting it in a manner that gives consistent, harmonious, and sensible effect to all its parts.  *Id.* And, "when interpreting two statutory sections, we must attempt to harmonize them to give effect to their purposes and, if possible, reconcile them so as to uphold the validity of both."  *Gonzales v. Allstate Ins. Co.*, 51 P.3d 1103, 1106 (Colo. App.2002).

### B.   Statute of Limitations for Escape

¶ 9 Defendant was originally charged in absentia with escape on May 28, 1975, but the charge was administratively dismissed on December 9, 1981.  He argues that the statute of limitations began to run from the date of dismissal and that the People had eight years from that date to file new charges. Because the People did not file new charges until 2007, he argues that the statute of limitations bars his prosecution.  We are not persuaded by these arguments.

¶ 10 The statute of limitations for escape— which is considered a class 2 felony when committed following conviction for a class 1 or class 2 felony—is three years. § 16–5–

401(1)(a),   C.R.S.2012;   *see*   § 18–8–208(1), C.R.S.2012.   If escape is considered to be a continuing offense under *People v. Thoro Products Co.*, 70 P.3d 1188, 1192–93 (Colo. 2003), the statute of limitations would not begin to run so long as the illegal conduct was continuing.

¶ 11 In *Thoro Products*, the Colorado Supreme Court adopted the federal framework for determining whether an offense is continuing.  *Id.* Under that framework, "the doctrine of continuing offenses should be applied in only limited circumstances."  *Id.* at 1193 (quoting *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970)).   An offense is not a continuing offense unless (1) the explicit language of the substantive criminal statute compels such a conclusion, or (2) the nature of the crime involved is such that the legislature must assuredly have intended that it be treated as a continuing one.  *Id.*; *see also Toussie*, 397 U.S. at 115, 90 S.Ct. 858.

¶ 12 The statutory provision pertinent to defendant states:

> A person commits a class 2 felony if, while being in custody or confinement following conviction of a class 1 or class 2 felony, he knowingly escapes from said custody or confinement.

§ 18–8–208(1).

¶ 13 Because the explicit language of section 18–8–208(1) does not address whether escape is a continuing offense, we must proceed to the second prong of the *Thoro Products* analysis.   Applying that second prong, as described more fully below, we conclude that the crime of escape under section 18–8–208 is a continuing offense for purposes of the statute of limitations.

¶ 14 Defendant argues, and we recognize, that there is a presumption against construing crimes as continuing offenses. *See People v. Pérez*, 129 P.3d 1090, 1092 (Colo.App.2005) (citing *Toussie*, 397 U.S. at 135, 90 S.Ct. 858).   Further, we note that "escape" is not defined as a continuing activity either in the elemental escape statute, section 18–8–208, or in the general definitional statute, section 18–8–101, C.R.S.2012.

¶ 15 Defendant also relies on the Colorado Supreme Court's interpretation of the statutory term "escape." In *People v. Lanzieri,* 25 P.3d 1170, 1172 (Colo.2001), the supreme court defined the crime of escape as

consist[ing] of the following essential elements: (1) a voluntary act; (2) which constitutes a departure from one of the forms of lawful custody or confinement specified in the escape statute; (3) by a prisoner; and (4) committed "knowingly," i.e., with an awareness on the part of the prisoner that his or her conduct is of the nature proscribed.

*See also Massey v. People,* 649 P.2d 1070, 1072 (Colo.1982) (escape is the "voluntary departure from lawful custody by a prisoner with the intent to evade the due course of justice" (quoting *Gallegos v. People,* 159 Colo. 379, 387, 411 P.2d 956, 960 (1966), *superseded by statute,* Ch. 224, sec. 43, § 18–8–208, 1977 Colo. Sess. Laws 959, 966; Ch. 44, sec. 50, § 18–8–208(8), 1978 Colo. Sess. Laws 252, 263, *as recognized in People v. Thornton,* 929 P.2d 729, 732 (Colo.1996))); *cf. People v. Williams,* 199 Colo. 515, 517, 611 P.2d 973, 974 (1980) (addressing crime of holding hostages in § 18–8–207, C.R.S.2012, and stating that, while the term "escape" is not specifically defined in the Colorado Criminal Code, the parties nevertheless agreed that the term had the same meaning for purposes of § 18–8–207 as for purposes of § 18–8–208).

¶ 16 According to defendant, because the supreme court's definition of the crime of "escape" emphasizes the element of departure, and does not mention subsequent conduct, the crime of escape is therefore a discrete act that is complete upon escape from custody, and does not continue while the escapee remains at large. However, the supreme court has not yet been called upon to decide whether escape is a continuing offense, and we do not read its opinions as foreclosing such a construction.

¶ 17 Under the second *Thoro* prong, we are required to consider what the General Assembly must have intended. *See Thoro Products,* 70 P.3d at 1193; *see also United States v. Bailey,* 444 U.S. 394, 413, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). We conclude that it must have intended for escape to be deemed a continuing offense.

¶ 18 Our analysis is informed by the definition of "escape" contained in a related criminal statute, section 18–8–201(2), C.R.S. 2012, which appears within the same Part 2 of Article 8 of the Criminal Code as the escape statute under which defendant was charged here. Section 18–8–201(2), which criminalizes the aiding, abetting, or assisting of escape from custody or confinement, states that "escape" is "deemed to be a *continuing activity* commencing with the conception of the design to escape and *continuing until the escapee is returned to custody* or the attempt to escape is thwarted or abandoned." (Emphasis added.)

¶ 19 The language of section 18–8–201(2) clearly indicates that the General Assembly intended to treat escape as a continuing offense. *See Thoro Products,* 70 P.3d at 1193.

¶ 20 Reading sections 18–8–201(2) and 18–8–208 together, and giving effect to the purpose of punishing escape, we are compelled to the conclusion that, given the nature of the escape crime, the General Assembly must have intended that escape under section 18–8–208 be treated as an offense that continues until the escapee has been returned to custody or the attempt to escape has been thwarted or abandoned. *See Thoro Products,* 70 P.3d at 1193; *see also People v. Velarde,* 657 P.2d 953, 955 (Colo.1983) (the "fundamental purpose" of punishing escape "is to prevent the evasion of the due course of justice"). Indeed, it would be illogical for the General Assembly to treat escape as a continuing offense in the context of aiding escape, but not to do so in the context of the substantive offense itself. *See Daniels,* 240 P.3d at 411 (in construing a statute, we do not interpret it so as to render any part of it meaningless or absurd).

¶ 21 We observe that many other courts, including the United States Supreme Court, have explicitly held that escape is a continuing offense, and have emphasized the continuing threat posed to society by escapees, especially escaped felons, while they remain at large. *See Bailey,* 444 U.S. at 413, 100 S.Ct. 624 ("[W]e think it clear beyond perad-

venture that escape from federal custody ... is a continuing offense and that an escapee can be held liable for failure to return to custody as well as for his initial departure.") (applying 18 U.S.C. § 751(a) (2006)); *Harbin v. State*, 581 So.2d 1263, 1266 (Ala.Crim.App. 1991); *Wells v. State*, 687 P.2d 346, 350 (Alaska Ct.App.1984); *People v. Miller*, 157 Ill.App.3d 43, 109 Ill.Dec. 146, 509 N.E.2d 807, 808–09 (1987); *State v. Francois*, 577 N.W.2d 417, 421 (Iowa 1998); *State v. Burnett*, 292 Minn. 484, 195 N.W.2d 189, 189 (1972); *State v. Jones*, 556 S.W.2d 736, 738 (Mo.Ct.App.1977); *Campbell v. Griffin*, 101 Nev. 718, 710 P.2d 70, 72 (1985); *State v. Martinez*, 109 N.M. 34, 781 P.2d 306, 309 (App.1989); *State v. White*, 21 N.C.App. 173, 203 S.E.2d 644, 646 (1974); *State v. Campbell*, 245 S.W.3d 331, 338 (Tenn.2008); *State v. Burns*, 151 Vt. 621, 564 A.2d 593, 595 (1989); *Ray v. State*, 33 Wis.2d 685, 148 N.W.2d 31, 33 (1967). *But see People v. Mendoza*, 108 Mich.App. 733, 310 N.W.2d 860, 863–64 (1981) (Michigan escape statute has not been interpreted to describe continuing offense); *Fitzgerald v. State*, 782 S.W.2d 876, 879 (Tex.Crim.App.1990) (under Texas escape statute, offense is complete when escapee moves outside confines of penitentiary without authority to do so).

¶ 22 We are persuaded that, given the danger to society posed by escaped convicts, and considering the General Assembly's definition of escape in section 18–8–201, the General Assembly intended for escape to be treated as a continuing offense.

¶ 23 We reject defendant's contention that interpreting escape as a continuing offense would violate double jeopardy. He has not explained his contention that such an interpretation would subject him to multiple punishments for a single offense, and we can conceive of no circumstances where this would be so.

¶ 24 Accordingly, because we conclude that escape is a continuing offense, the statute of limitations did not begin to run until defendant was returned to custody, and, as explained below, it did not begin to run until he was returned to custody *in Colorado*.

## C. Custody

¶ 25 Defendant next argues that, even if escape is a continuing offense, he was "returned to custody" following his arrest in California in 1990 for public intoxication. Thus, according to defendant, the statute of limitations began to run in 1990, and by 1998 his prosecution was barred. We disagree.

¶ 26 We have already concluded that the word "escape" in section 18–8–208 is to be construed consistently with the definition of that same term in section 18–8–201(2), and that escape under section 18–8–208 is an offense that continues until a convict is "*returned* to custody or the attempt to escape is thwarted or abandoned." § 18–8–201(2) (emphasis added). The plain meaning of the word "return" indicates that an escape ends when a suspect is transferred to the custody of the jurisdiction from which he escaped. *See Webster's Third New International Dictionary* 1941 (2002) ("return" means, among other things, "to pass back to an earlier possessor"). We therefore conclude that, because defendant was not returned to the custody of the Department of Corrections in Colorado until 2007, the statute of limitations did not begin to run until that time.

¶ 27 Consequently, we reject defendant's contention that his prosecution was barred by the applicable statute of limitations.

## III. Exclusion of Evidence

¶ 28 Defendant next argues that the trial court erred in excluding evidence that explained the circumstances leading up to his escape. We need not decide whether the trial court erred in excluding this evidence because any such error was harmless.

¶ 29 "It is within the province of the trial court to determine whether evidence is relevant, and that decision will not be overturned absent an abuse of discretion." *People v. Greenlee*, 200 P.3d 363, 366 (Colo.2009). A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *Id.* If an error is preserved but nonconstitutional, we review it for harmless error. Crim. P. 52(a); *Hagos v. People*, 2012 CO 63, ¶ 12, 288 P.3d 116. Reversal is re-

quired only "if the error affects the substantial rights of the parties." *Hagos*, ¶ 12.

¶ 30 "Res gestae is a theory of relevance which recognizes that certain evidence is relevant because of its unique relationship to the charged crime." *Greenlee*, 200 P.3d at 368. "Res gestae evidence includes the circumstances, facts and declarations which arise from the main event and serve to illustrate its character," as well as "evidence that is closely related in both time and nature to the charged offense." *People v. Quintana*, 882 P.2d 1366, 1373 (Colo.1994).

¶ 31 Defendant sought to introduce the following evidence under a res gestae theory: While he was serving his initial sentence for murder, prison officials informed him of threats against his life and suggested that he escape; and prison officials enabled his escape by driving him to a field next to a road and leaving him there, unsupervised. He argues, and the People concede, that this evidence would be relevant to explain the circumstances of the crime, and defendant's mental state during the crime.

¶ 32 Any error in denying the admission of this evidence was harmless, however, because exclusion of the evidence inured to defendant's benefit. *See People v. O'Neal*, 228 P.3d 211, 216 (Colo.App.2009). Had evidence of the circumstances surrounding defendant's escape been admitted, it would have tended to prove that he knowingly escaped, thus establishing an essential element of the prosecution's case. *See Massey*, 649 P.2d at 1073 (describing "knowingly" mental state as essential element of escape). Accordingly, we reject defendant's contention that reversal is required on this issue.

## IV. "Choice of Evils" Defense

¶ 33 Defendant further contends that the trial court erred in not giving the jury an instruction on the "choice of evils" affirmative defense. We disagree.

¶ 34 "We review de novo whether the evidence in the record, considered in the light most favorable to the defendant, is substantial and sufficient in both quantity and quality to warrant the giving of the affirmative defense instruction." *People v. DeWitt*, 275 P.3d 728, 733 (Colo.App.2011).

¶ 35 To raise an affirmative defense, a defendant need only present "some credible evidence" supporting the defense. § 18–1–407(1), C.R.S.2012. This relatively low, "scintilla of evidence" standard means that the evidence necessary to justify an affirmative defense instruction may come solely from the defendant's testimony, even if the evidence is improbable. *DeWitt*, 275 P.3d at 733.

¶ 36 Ordinarily, for the defense of choice of evils to be available, it must be shown that the defendant's conduct was necessitated by a specific and imminent threat of injury to his person under circumstances which left the defendant no reasonable alternative other than to commit the crime of which he is charged. *People v. McKnight*, 626 P.2d 678, 681 (Colo.1981). However, if the charge is escape, the defendant must also show that he or she (1) committed the escape without violence, and (2) submitted to authorities voluntarily after reaching a position of safety. *Id.*

¶ 37 Here, defendant presented no evidence that he voluntarily submitted to authorities as soon as he reached a position of safety. On the contrary, he eluded capture for thirty-two years. Therefore, the trial court did not err in refusing to instruct the jury on the "choice of evils" affirmative defense.

## V. Outrageous Government Conduct

¶ 38 Finally, defendant contends that the trial court erred in denying, as untimely, his motion to dismiss the case based on outrageous government conduct. We are not persuaded.

¶ 39 Under Crim. P. 47(b), if a written motion is set for a hearing, it "shall be served not later than [seven] days before the time specified for the hearing unless a different period is fixed by rule or order of the court." In its discretion, a trial court may enlarge the time period for filing motions, and may, upon a motion for enlargement of time, permit a particular motion to be filed "after expiration of the specified period if the fail-

ure to act on time was the result of excusable neglect." *See* Crim. P. 45(b)(1)—(2).

¶ 40 The trial court set a motions hearing for April 8, 2011, and allowed the parties until March 26, 2011, to file motions. Defendant filed the motion to dismiss based on outrageous government conduct on June 24, 2011—three days before trial—and did not allege excusable neglect for the late filing. The court denied the motion as untimely, but gave defendant the opportunity to raise the issue again in a post-trial motion. Although defendant submitted a post-trial motion renewing his earlier motion, he ultimately abandoned it.

¶ 41 Under these circumstances, we conclude that the trial court did not abuse its discretion in denying the untimely motion.

¶ 42 Judgment affirmed.

JUDGE LOEB and JUDGE VOGT * concur