**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellant,**

v.

**Robin Merrill HESS,**
**Defendant-Appellee.**

**No. 83SA152.**

Supreme Court of Colorado,
En Banc.

Sept. 4, 1984.

Rehearing Denied Sept. 24, 1984.

James F. Smith, Dist. Atty., Kathryn J. Aragon, Emil A. Rinaldi, Deputy Dist. Attys., Brighton, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Jody Sorenson Theis, Matthew L. Goldsmith, Deputy State Public Defenders, Denver, for defendant-appellee.

ROVIRA, Justice.

Robin M. Hess, defendant, is charged with second-degree assault on a police officer.[1] He filed a motion to dismiss or, in the alternative, to suppress evidence, state-

1.  § 18–3–203(1)(c), 8 C.R.S. (1978).

ments, and observations of police officers, claiming that "there was no basis for the stop of the Defendant, no probable cause for such conduct by the police and was [sic] in violation of C.R.S. § 25–1–310." In this appeal, the People challenge the district court's order dismissing the case after it had determined that the police had no valid reason to stop the defendant. We reverse.

## I.

At the hearing on the defendant's motion, Officer Joe Marino of the Commerce City Police Department testified that on July 24, 1982, at approximately 1:30 a.m., he received a radio dispatch informing him of a disturbance in progress in the 5400 block of East 52nd Avenue. Upon arriving at that location in a marked police car, he saw two men and a woman standing in the middle of East 52nd Avenue. They were arguing heatedly and did not make way for the police vehicle. Marino, who was in uniform, got out of his car and approached the three individuals. He later testified that the defendant and the other man "had obviously been [in] a fight. Their clothes were messed up. I could tell they had been drinking. I could smell the odor of an alcoholic beverage." From what Marino could tell, there had been a fight at a party and the three were arguing about whether to return to the house in question.

Marino asked for identification, but the three refused to cooperate. They told him he had no business being there and no right to be harassing them. According to the two men, they were "taking care of the problem themselves." Marino testified that "[a]t the time I didn't really know what the problem was other than we had gotten a call into that area for a disturbance." Marino advised the three that he had received a disturbance call and that he wanted to know what they were doing in the middle of the street arguing. He testified that his intention was "to find out who they were, what they were doing and if they were capable enough of just going home on their own." Eventually, the other

man and the woman identified themselves as the Tallents. The defendant, meanwhile, after repeated refusals to tell Marino who he was, finally gave the officer his name and stated that his identification was in his van.

As the argument continued, Officer Marino determined that the defendant and Mr. Tallent were intoxicated. He advised them that he was going to take them to a detoxification center for the night.[2] Marino asked Officer Drake, who had arrived on the scene by this time, to help him place the defendant and Tallent in protective custody for "detox hold." When Drake attempted to put handcuffs on the defendant, however, a fight ensued. The defendant broke loose and began hitting Drake just as Officer Compton arrived to provide assistance. Marino saw the defendant strike both Drake and Compton with his hands and feet for several minutes. As a result, Drake suffered a broken ankle. The fight ended when Marino finally pulled the defendant "off the top of Officer Drake."

During the cross-examination of Officer Marino, the trial court suddenly decided to dismiss the case. It asked the People: "What I want to know ... is how do you justify what the officer has done to this point because as I read the cases, there's no justification for ... the officer's stop of these people ...." When the People attempted to respond, the court stated that, in its view, the only reason Officer Marino approached the defendant and his companions was because they were arguing in the middle of the street at an early hour in the morning. If he had not approached them, the court reasoned, there would have been no argument directed at him and no fight involving the other officers. The court concluded:

"These people were arguing. That's not a crime. You said you had no reason to suspect them of any crime at the time that you drove up there. I'm going to grant the motion to dismiss. I can't find that this passes muster on any of the

2. See § 25–1–310(1), 11 C.R.S. (1982).

cases that the Court is aware of. The testimony of the other two officers would not—which I will assume is to exactly the same effect except to further delineate the injuries that those officers sustained. None of that, none of what occurred after this arrest is—or attempted arrest or stop is sufficient to justify the stop and arrest itself."

On appeal, the People argue that the officer was justified in approaching the defendant and initiating an investigation. They contend that the defendant's actions, along with those of the other two individuals, created a reasonable suspicion of disorderly conduct,[3] especially in light of the disturbance call directing Marino to that particular block. His reasonable suspicion therefore justified a brief intrusion into the defendant's privacy for the limited purpose of asking him who he was and what he was doing. The defendant, in response, contends that Officer Marino did not have a reasonable suspicion that he and his companions were involved in any criminal conduct. As a result, the stop was illegal, and the assault on the police officers, which led to charges against the defendant, was the product of unlawful police activity.

Because the trial court terminated the hearing before the first witness completed his testimony, we are faced with an incomplete record and, as a result, are unable to determine whether there was a proper investigatory stop of the defendant. For the reasons expressed in Part II, we conclude that the trial court erred in dismissing the case. The defendant's motion, however, was phrased in the alternative as a motion to dismiss or to suppress. We therefore remand for a hearing on the defendant's motion to suppress, at which time, in light of our ruling in Part II, the People can present additional testimony and the defendant, if he so chooses, can present his version of what happened on July 24, 1982.

## II.

■ The trial court focused exclusively on the propriety of the stop in deciding to dismiss the case against the defendant. It did not address the sequence of events following the stop. In our opinion, the issue which should have been addressed by counsel and by the trial court is not whether the officer was justified in initiating an investigation or whether the stop was legal, but whether dismissal is an appropriate remedy where the defendant uses force in resisting what may arguably be an unlawful arrest or detention. Two officers were injured in the fight that occurred in this case. The potential for further violence and injury was certainly present. Impliedly, the trial court ruled that the defendant's assault on the officers was somehow irrelevant because the initial stop was unlawful. We disagree. Even if the stop or the taking into protective custody was unlawful, we conclude that the defendant had no right to resist an arrest and therefore dismissal was an inappropriate remedy.

■ Under the common law, an unlawful arrest could be resisted by using no more force than was reasonably necessary. *See, e.g., United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *John Bad Elk v. United States,* 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900); *Brown v. United States,* 159 U.S. 100, 16 S.Ct. 29, 40 L.Ed. 90 (1895). The basis for the rule was that a person was entitled to use reasonable force to prevent an unlawful invasion of his physical integrity and personal liberty. *Miller v. State,* 462 P.2d 421 (Alaska 1969). As one commentator has stated:

"[The rule] was developed largely during a period when most arrests were made by private citizens, when bail for felonies was usually unattainable, and when years might pass before the royal judges arrived for a jail delivery. Further, conditions in English jails were then such that a prisoner had an excellent chance of dying of disease before trial."

Warner, *The Uniform Arrest Act,* 28 Va.L. Rev. 315, 315 (1942). The rule has been subject to substantial criticism, and both

---

**3.** *See* § 18–9–106(1)(c) and (d), 8 C.R.S. (1978).

the Uniform Arrest Act[4] and the Model Penal Code (MPC)[5] recommend its abolition when the defendant "knows" or "reasonably believes" that the arrest is being made by a police officer.

The common law rule has been abrogated in Colorado. Section 18–8–103, 8 C.R.S. (1978 & 1983 Supp.), provides:

"**Resisting arrest.** (1) A person commits resisting arrest if he knowingly prevents or attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:

(a) Using or threatening to use physical force or violence against the peace officer or another; or

(b) Using any other means which creates a substantial risk of causing bodily injury to the peace officer or another.

(2) It is no defense to a prosecution under this section that the peace officer was attempting to make an arrest which in fact was unlawful, if he was acting under color of his official authority, and in attempting to make the arrest he was not resorting to unreasonable or excessive force giving rise to the right of self-defense. A peace officer acts 'under color of his official authority' when, in the regular course of assigned duties, he is called upon to make, and does make, a judgment in good faith based upon surrounding facts and circumstances that an arrest should be made by him.

(3) The term 'peace officer' as used in this section ... means a peace officer in uniform or, if out of uniform, one who has identified himself by exhibiting his credentials as such peace officer to the person whose arrest is attempted."

◼ From a reading of section 18–8–103, it is clear that the legislature has determined that a citizen has no right to use or threaten to use physical force against a peace officer who is making an arrest, even if the arrest is unlawful, so long as the officer is acting under color of his official authority and is not using excessive force. In *People v. Mason*, 632 P.2d 616 (Colo. App.1981), the court of appeals agreed that the "plain wording" of the statute mandated this result. *See also People v. Johnson*, 677 P.2d 424 (Colo.App.1983) (a police officer is "engaged in the performance of his duties" while making in good faith an arrest or stop which may be later adjudged to be invalid; defendant's conviction for assault on a police officer affirmed).

In effect, the legislature has rejected self-help as a means of contesting arrests made under color of state law. In considering a similar statute,[6] the California Supreme Court stated:

"While defendant's rights are no doubt violated when he is arrested and detained a matter of days or hours without probable cause, we conclude the state in removing the right to resist does not contribute to or effectuate this deprivation of liberty. In a day when police are armed with lethal and chemical weapons, and possess scientific communication and detection devices readily available for use, it has become highly unlikely that a suspect, using reasonable force, can escape from or effectively deter an arrest,

---

**4.** Section 5 of the Uniform Arrest Act provides: "If a person has reasonable ground to believe he is being arrested by a peace officer, it is his duty to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest." Warner, *supra*, at 345.

**5.** Model Penal Code § 3.04(2)(a)(i) (Tentative Draft No. 8, 1958) rejects the common law privilege of self-help by providing that the use of force is not justifiable "to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful."

**6.** Cal.Penal Code § 834a (West 1970) provides: "If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest." Based on the Uniform Arrest Act, this statute omitted the reference to "regardless of whether or not there is a legal basis for the arrest." Nevertheless, the California Supreme Court has indicated that section 834a prohibits forceful resistance to unlawful as well as lawful arrests. *People v. Curtis*, 70 Cal.2d 347, 450 P.2d 33, 74 Cal.Rptr. 713 (1969).

whether lawful or unlawful. His accomplishment is generally limited to temporary evasion, merely rendering the officer's task more difficult or prolonged. Thus self-help as a practical remedy is anachronistic, whatever may have been its original justification or efficacy in an era when the common law doctrine permitting resistance evolved.... Indeed, self-help not infrequently causes far graver consequences for both the officer and the suspect than does the unlawful arrest itself. Accordingly, the state, in deleting the right to resist, has not actually altered or diminished the remedies available against the illegality of an arrest without probable cause; it has merely required a person to submit peacefully to the inevitable and to pursue his available remedies through the orderly judicial process."

*People v. Curtis,* 70 Cal.2d 347, 353, 450 P.2d 33, 36–37, 74 Cal.Rptr. 713, 716–17 (1969) (footnote omitted).

We agree with the *Curtis* rationale. The rights available today to a person who has been arrested far exceed those available to persons who were arrested when the common law rule came into existence. The right to reasonable bail, court appointed counsel, and early judicial determination of probable cause following arrest lessen the impact of an unlawful arrest. *State v. Crane,* 46 Or.App. 547, 612 P.2d 735 (1980). As one court has indicated: "Where society has provided a means to obtain prompt and impartial review of legal disputes, the necessity for self-help remedies is radically dissipated and society need no longer tolerate such efforts." *Ellison v. State,* 410 A.2d 519, 525 (Del.Super.1979).

The Alaska Supreme Court summarized and applied these principles in *Miller v. State,* 462 P.2d 421 (Alaska 1969). In that case, the defendant had been convicted of stabbing at a police officer who was attempting to arrest him. In response to the defendant's argument that his arrest was unlawful and, therefore, that his conviction should be reversed, the court stated:

"To us the question is whether any amount of force should be permitted to be used by one unlawfully but peaceably arrested. We feel that the legality of a peaceful arrest should be determined by courts of law and not through a trial by battle in the streets. It is not too much to ask that one believing himself unlawfully arrested should submit to the officer and thereafter seek his legal remedies in court. Such a rule helps to relieve the threat of physical harm to officers who in good faith but mistakenly perform an arrest, as well as to minimize harm to innocent bystanders. The old common law rule has little utility to recommend it under our conditions of life today. We hold that a private citizen may not use force to resist peaceful arrest by one he knows or has good reason to believe is an authorized peace officer performing his duties, regardless of whether the arrest is illegal in the circumstances of the occasion."

*Id.* at 427 (footnote omitted). *See also State v. Koonce,* 89 N.J.Super. 169, 214 A.2d 428 (1965); *State v. Doe,* 92 N.M. 100, 583 P.2d 464 (1978); *Gonzalez v. State,* 574 S.W.2d 135 (Tex.Crim.App.1978) (all reaffirming the principle that a private citizen may not use force to resist arrest by one he knows or has good reason to believe is an authorized police officer engaged in the performance of his duties, whether or not the arrest is unlawful).

The testimony of Officer Marino established that he was wearing his police uniform and driving a marked police car when he approached the defendant and his companions, as were Officers Drake and Compton when they arrived on the scene. Marino also testified that the defendant resisted being placed in the police car and hit and kicked both Drake and Compton. There was no evidence introduced that the police officers resorted to unreasonable or excessive force giving rise to the right of self-defense. The evidence established that Officer Marino was acting under color of his official authority, that is, he was called upon to make, and did make, a judgment in good faith that the defendant should be

placed in protective custody. We believe that the same considerations are present in resisting efforts by police officers to place a person in protective custody as in resisting an arrest. Therefore, we hold that a person may not use force to resist being placed under arrest or in protective custody by a police officer engaged in the performance of his duties, regardless of whether the police conduct is unlawful.

The order of the trial court dismissing the case against the defendant is reversed. The cause is remanded to the trial court for further proceedings consistent with this opinion.