The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Eric J. LANZIERI, Defendant–Appellee.

No. 98CA0480.

Colorado Court of Appeals,
Div. II.

March 18, 1999.

Rehearing Denied July 1, 1999.

Certiorari Granted March 27, 2000.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General and Special District Attorney, Nineteenth Judicial District, Denver, Colorado, for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge KAPELKE.

The People appeal from a judgment of acquittal notwithstanding a jury verdict finding the defendant, Eric J. Lanzieri, guilty of escape. We affirm.

Defendant was convicted of escape in violation of § 18–8–208, C.R.S.1998 (a person commits a class three felony if, while in custody or confinement following conviction of a felony other than a class one or two felony, he knowingly escapes from such custody or confinement) and § 17–27–106, C.R.S.1998, which provides, in relevant part, as follows:

(1) If an offender fails to remain within the extended limits of such offender's confinement or placement ... such offender shall be deemed to have escaped from custody and shall, upon conviction thereof, be punished as provided in section 18–8–208, C.R.S.

The evidence at trial established the following facts. Defendant was convicted of

vehicular eluding and sentenced to two years in the custody of the Department of Corrections (DOC). He was released on parole but soon thereafter was charged with violating the terms of his parole.

The parole board conducted a hearing and determined that defendant had violated the terms of his parole. Rather than revoke defendant's parole and require him to serve the remainder of his original sentence in the DOC, the parole board continued parole with the following additional conditions: "enroll and complete RTC [Residential Treatment Center, a substance abuse program], and provide acceptable placement per [parole officer] directive (prior to release from RTC) for 180 days before transferring back to Arizona."

Defendant met with his parole officer and signed a document acknowledging the parole officer's directive that, after completing RTC, defendant was to enter the Restitution Center, a community corrections facility, and "successfully complete 180 days."

Defendant entered the community corrections program and signed two documents acknowledging that he could be charged with escape if he failed to remain there.

One evening, defendant left the community corrections facility without authorization. He was arrested the next day and was charged with escape.

In granting defendant's post-trial motion for judgment of acquittal, the trial court ruled that the issue of whether defendant was in lawful "confinement or custody" at the time he left the facility was a question of law. The trial court concluded that defendant was not in lawful custody or confinement because the parole board had not directed or approved his placement in a community corrections facility. Further, the trial court concluded that defendant's parole officer was not authorized to require defendant to enter a community corrections facility. This appeal followed.

"Lawful" confinement or custody is an element of the crime of escape. *People v. Andrews*, 871 P.2d 1199 (Colo.1994); *People v. Akers*, 746 P.2d 1381 (Colo.App.1987). However, in *People v. Brown*, 695 P.2d 776 (Colo.

App.1984), a division of this court held that a defendant convicted of escaping from a community corrections facility to which he had been lawfully sentenced could not seek to overturn his escape conviction by challenging an irregularity in the probation department's supervision of his placement in community corrections.

Similarly, in *People v. Rivera*, 37 Colo.App. 4, 542 P.2d 90 (1975), another division of this court held that if a defendant escaped and the conviction for which he was being confined was later reversed on appeal, such reversal would not constitute a defense to the escape charge because the sentence was lawful at the time it was imposed.

Initially, we reject the People's assertion that *Brown* and *Rivera* preclude defendant from challenging the legality of his confinement to community corrections. Defendant is not challenging an irregularity regarding the implementation of an otherwise valid community corrections confinement. Rather, he is claiming that, as a matter of law, he was *never* lawfully placed or confined in community corrections within the meaning of § 17–27–106.

In interpreting statutes, our primary objective is to ascertain and give effect to the intent of the General Assembly. Statutory language should be given effect according to its plain and literal meaning, unless to do so would lead to absurd results. *People v. Bowman*, 812 P.2d 725 (Colo.App.1991).

A reading of the plain language of the parole and community corrections statutes reveals that the General Assembly vested the parole board with exclusive authority to place or confine a parolee in community corrections as a condition of parole. *See* § 17–22.5–403(8), C.R.S.1998 (the conditions of parole shall be established by the state board of parole which may modify them if a violation is shown); and § 17–27–105(3)(a), C.R.S.1998 (the state board of parole may refer any parolee for placement in a community corrections program).

No statute permits a parole officer to place or confine a parolee in a community corrections facility as a condition of parole. Also, the General Assembly has specified the limit-

ed circumstances in which a parole officer can take a parolee into custody, none of which is present here. *See* § 17–2–103(1), C.R.S.1998 (parole officer may arrest parolee based on probable cause to believe the parolee has violated parole, committed a new offense, etc.).

Nevertheless, the People maintain that a parole officer is empowered to confine a parolee in community corrections pursuant to § 17–2–201(5)(f)(I)(C), C.R.S.1998, which requires that a parolee "obey" his or her parole officer. The People also rely on § 17–22.5–303(7), C.R.S.1998, which authorizes parole officers to assist parolees with "housing" and "other services." We conclude that the People's reading of these provisions is overly broad and could lead to absurd results such as allowing parole officers to "house" parolees in a county jail.

■ Alternatively, the People urge us to adopt an expansive reading of §§ 17–22.5–403(8) and 17–27–105(3)(a) to reach a conclusion that the parole board can delegate to a parole officer authority to confine a parolee in community corrections. Even if we were persuaded to follow such an interpretation, which we are not, we would still uphold the trial court's finding that no such delegation took place in this case.

The parole board's order modifying the terms of defendant's parole required only that defendant "provide acceptable placement" pursuant to the parole officer's directive. Lacking any specific reference to confining defendant in community corrections, this order does not constitute a sufficient basis for concluding that the parole board intended to delegate its exclusive authority to establish defendant's parole conditions.

In light of the above analysis, we agree with the trial court that the element requiring that defendant be in "lawful custody" was not shown. Hence, the guilty verdict was not sustainable.

Accordingly, the judgment of acquittal is affirmed.

Judge CRISWELL and Judge PLANK concur.