The PEOPLE of the State of
Colorado, Petitioner,

v.

Eric LANZIERI, Respondent.

No. 99SC596.

Supreme Court of Colorado,
En Banc.

June 11, 2001.

Rehearing Denied July 2, 2001.

Ken Salazar, Attorney General, Robert Mark Russell, Assistant Solicitor General and Special Deputy District Attorney, A.M. Dominguez, District Attorney, John D. Seidel, Special Deputy District Attorney, Denver, CO, Attorneys for Petitioner.

David Kaplan, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, CO, Attorneys for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' opinion in *People v. Lanzieri*, 996 P.2d 156 (Colo.App.1999). Eric Lanzieri was tried and found guilty of escape in 1998. Lanzieri filed a motion for judgment of acquittal notwithstanding the verdict, arguing that he could not be guilty of escape since he had never lawfully been placed into custody. The trial court granted the motion, finding that Lanzieri's parole officer had acted without authority in assigning Lanzieri to custody in a community corrections facility. The court concluded that Lanzieri had not been in lawful custody for the purposes of Colorado's escape statute, and therefore, his escape conviction could not stand. This ruling was upheld by the court of appeals.

We hold that the court of appeals erred in finding that because Lanzieri's parole officer did not have authority to refer him to community corrections, Lanzieri was not in lawful custody and therefore could not be convicted of escape. Accordingly, we reverse the judgment of the court of appeals and remand the case for proceedings consistent with this opinion.

## I.

In 1996, the defendant, Eric Lanzieri ("Lanzieri") was convicted of vehicular eluding, a class five felony, and sentenced to two years in the Department of Corrections. After being placed on parole, Lanzieri was charged with violating parole and appeared in a hearing before the parole board.

The parole board found that Lanzieri had violated parole, and ordered him to continue his parole subject to several conditions. Specifically, the parole board mittimus ordered Lanzieri to "enroll and complete RTC, and provide acceptable placement per [parole officer] directive (prior to release from RTC) for 180 days." The Residential Treatment Center ("RTC"), located in Greeley, Colorado, is an inpatient chemical dependency program for adult felony offenders with substance abuse problems. Lanzieri successfully completed RTC's forty-five day program. Prior to the program's completion, Lanzieri's parole officer issued a directive ordering Lanzieri to enter a community corrections facility, The Restitution Center, for 180 days. Lanzieri signed the directive and acknowledged that he could be charged with escape if he left the facility.

In July 1997, Lanzieri left the community corrections facility without authorization. He was apprehended the following day and charged with escape.

Lanzieri was tried by jury and found guilty of escape under section 18–8–208(2), 6 C.R.S. (2000), and section 17–27–106, 6 C.R.S. (1999). The trial court subsequently granted Lanzieri's motion for judgment of acquittal notwithstanding the verdict, finding that he could not be convicted of escape because he had not been in lawful confinement or custody. The court determined that the legislature gave sole authority to the parole board to set the terms and conditions of parole and make referrals to community corrections. The court concluded that Lanzieri's parole

officer had no statutory authority to place him in custody at the community corrections facility and therefore, Lanzieri's escape conviction could not stand.

The court of appeals agreed with the trial court, finding that Lanzieri was not lawfully placed in custody for the purposes of sections 18–8–208, 6 C.R.S. (2000) and 17–27–106, 6 C.R.S. (1999). *People v. Lanzieri*, 996 P.2d 156, 157–58 (Colo.App.1999). Lanzieri's acquittal was upheld, and this appeal followed.

■ We granted certiorari to consider whether a parolee can be convicted of escape despite an informality or irregularity in the process of placing the parolee in community corrections.[1] We now hold that a parolee may be convicted of escape even if there is a legal defect in the process of confinement. Such defects must be challenged through appropriate legal means rather than through unauthorized departure from a custodial facility.

## II.

■ The fundamental purpose of Colorado's general escape statute is to "prevent the evasion of the due course of justice." *People v. Velarde*, 657 P.2d 953, 955 (Colo.1983). In this case, the defendant argues that an irregularity in the proceedings leading to his commitment in a community corrections facility justified his unauthorized departure from custody. We disagree.

### A.

■ Lanzieri was charged with escape under section 18–8–208(2), 6 C.R.S. (2000), which provides that:

A person commits a class 3 felony if, while being in custody or confinement following conviction of a felony other than a class 1 or class 2 felony, he knowingly escapes from said custody or confinement.[2]

Although the term "escape" is not defined in the statute, several cases have construed this term as it appears in section 18–8–208.

Under our common law, escape was defined as "the voluntary departure from lawful custody by a prisoner with the intent to evade the due course of justice." *Gallegos v. People*, 159 Colo. 379, 387, 411 P.2d 956, 960 (1966). This "intent to evade the due course of justice" led courts to construe the common-law offense of escape as a specific intent crime. *See People v. Thornton*, 929 P.2d 729, 732 (Colo.1996).

■ In 1977 and 1978, the legislature amended Colorado's Criminal Code to classify escape as a general intent offense. Ch. 224, sec. 43, § 18–8–208, 1977 Colo. Sess. Laws 959, 966; ch. 44, sec. 50, § 18–8–208(8), 1978 Colo. Sess. Laws 252, 263; *Thornton*, 929 P.2d at 732; *People v. Williams*, 199 Colo. 515, 518, 611 P.2d 973, 975 (1980). As a result, the mental state "knowingly" replaced the common-law mental state of "specific intent to evade the due course of justice." *Williams*, 199 Colo. at 518, 611 P.2d at 975; *see also Thornton*, 929 P.2d at 732.

■ The legislature's redesignation of escape as a general intent crime did not disturb the basic requirement that escape consist of a voluntary departure from lawful custody or confinement. *Williams*, 199 Colo. at 518, 611 P.2d at 975; *People v. Akers*, 746 P.2d 1381, 1383 (Colo.App.1987); *People v. Russell*, 703 P.2d 620, 622 (Colo.App.1985). Thus, the crime of escape consists of the following essential elements: (1) a voluntary act; (2) which constitutes a departure from one of the forms of lawful custody or confinement specified in the escape statute; (3) by a prisoner; and (4) committed "knowingly," i.e., with an awareness on the part of the prisoner that his or her conduct is of the nature proscribed. *Williams*, 199 Colo. at 518, 611 P.2d at 975.

---

1. We granted certiorari on the following issue:
   (1) Whether a parolee who may have been mistakenly placed in community corrections by a parole officer is nonetheless in "lawful" custody for the purposes of applying the escape statutes, §§ 17–27–106 & 18–8–208, 6 C.R.S. (1999), to the act of leaving the community corrections facility without authorization.

2. A defendant serving a sentence at a community corrections facility is in "custody" for the purposes of the escape statute. *See* § 17–27–106, 6 C.R.S. (2000); *People v. Forester*, 1 P.3d 758, 759 (Colo.App.2000); *People v. Brown*, 695 P.2d 776, 777 (Colo.App.1984).

### B.

We must determine whether Lanzieri can be convicted of escape pursuant to section 18–8–208 despite an irregularity in his confinement. Courts in our jurisdiction have previously upheld escape convictions even where the facts revealed a defect in the proceedings leading to a defendant's conviction or confinement. *See People v. Brown,* 695 P.2d 776 (Colo.App.1984); *People v. Rivera,* 37 Colo.App. 4, 542 P.2d 90 (1975).

In *Rivera,* the defendant was convicted of escape while serving a sentence imposed pursuant to a larceny conviction. The defendant argued that he had not been in lawful custody at the time of his escape because his larceny conviction was invalid. *Rivera,* 37 Colo.App. at 7, 542 P.2d at 92. The court disagreed, finding that even if the defendant's conviction for larceny could later be reversed, it would not constitute a defense to the charge of escape. *Id.* Concluding that "[a] prisoner's remedy is to seek judicial relief from the claimed illegal incarceration," the court found that "[a]n alleged error or irregularity ... in judicial proceedings leading to conviction and confinement does not so invalidate the judgment and the confinement as to justify escape." *Id.* The court upheld the defendant's escape conviction on the basis that the defendant had been serving a validly imposed sentence at the time of his escape. *Id.; see also People v. Velarde,* 657 P.2d 953, 955 (Colo.1983)(noting that a defendant's escape conviction would be upheld even if he was later found not guilty of the underlying felony).

*Brown* involved facts analogous to those in the present case. The defendant pled guilty to a vehicular homicide charge and was sentenced to a three-year term in a community corrections facility. *Brown,* 695 P.2d at 777. After four months, the defendant left the facility without authorization and was charged with escape. *Id.* The defendant argued that he had not been lawfully sentenced for the purposes of section 18–8–208 because the sentencing court had unlawfully delegated its sentencing authority to the probation department. *Id.*

The court of appeals noted that under section 17–27–105(1), a court has authority to sentence an offender to a community corrections facility. *Id.* The court then examined the statements made by the court during the sentencing hearing, finding that the court had not unlawfully delegated its sentencing authority to the probation department. *Id.* at 778. The court concluded that the defendant had been lawfully sentenced to the community corrections facility and was therefore subject to prosecution for escape from the facility, but noted that even if there had been an irregularity in the proceedings leading to the defendant's confinement, "[his] only justifiable remedy was to seek judicial relief, not to escape." *Id.*

■ Both *Rivera* and *Brown* make clear that legal defects in the proceedings leading to conviction and confinement do not necessarily constitute a defense to an escape charge. Informalities or irregularities in a defendant's confinement do not by themselves make custody unlawful for the purposes of section 18–8–208. Thus, we must look to the particular facts and circumstances of Lanzieri's case to determine whether his escape conviction should be upheld despite an error in the procedures leading to his confinement.

### C.

■ Section 17–2–103, 6 C.R.S. (2000), outlines the procedures applicable to parole revocation proceedings. This statute provides that if a parolee violates a condition of parole other than commission of a crime, the parole board may:

> Revoke parole for a period not to exceed one hundred eighty days and request the sheriff of the county in which the hearing is held to transport the parolee to a community corrections program pursuant to section 17–27–105(3) ....

§ 17–2–103(11)(b)(II)(B), 6 C.R.S. (2000). Pursuant to section 17–27–105, the state board of parole has the authority to refer a parolee to a community corrections facility as a condition of parole. § 17–27–105(3)(a), 6

C.R.S. (2000).[3]

In Lanzieri's case, the parole board ordered him to continue his parole subject to several conditions. The parole board mittimus specifically ordered Lanzieri to enroll and complete RTC, and then to complete acceptable placement pursuant to the parole officer's directive for 180 days. Thus, the mittimus expressly informed Lanzieri that he was required to complete a 180 day sentence after he completed the program at RTC.

Lanzieri's parole officer subsequently referred Lanzieri to a community corrections facility to serve the 180 day sentence. As discussed previously, only the parole board itself, not an individual parole officer, has the authority to refer parolees to a community corrections facility. Lanzieri argues that because of this defect in the proceedings leading to his confinement in community corrections, his escape conviction must be reversed. We reject this argument.

It is clear from the facts of this case that Lanzieri's placement in community corrections was not technically correct in all respects. However, the defect in the process leading to his confinement is not sufficiently egregious to make his custody unlawful and to justify escape. The parole board mittimus, sentencing Lanzieri to 180 days in "acceptable placement," was a valid order. Moreover, sections 17–2–103 and 17–27–105 expressly authorize a parolee to be placed in community corrections as a condition of parole. The fact that Lanzieri was specifically directed to a community corrections facility by a parole officer, rather than the parole board, does not invalidate the sentence as issued by the parole board. Thus, his confinement in community corrections does not constitute unlawful custody for the purposes of reversing his escape conviction.

Moreover, Lanzieri possessed the applicable mental culpability state as required by section 18–8–208. His departure from the

community corrections facility in July of 1997 was committed "knowingly," that is, with an awareness that his conduct was of the nature proscribed by the statute.

The parole board mittimus gave Lanzieri notice of his sentence, and expressly informed him that he would be in placement for 180 days following his completion of the RTC program. In addition, the parole officer's directive made Lanzieri well aware of his sentence to community corrections. At trial, Lanzieri testified that he knew that his placement in community corrections for 180 days was a condition of his parole, and that leaving the facility would be a parole violation. He testified that he believed his parole officer had the authority to refer him to the community corrections facility. Lanzieri also stated that he was aware that an unauthorized departure from the facility could constitute felony escape under section 18–8–208.

We conclude from these facts that the error made in the proceedings leading to Lanzieri's confinement was not so egregious as to reverse his conviction for felony escape. His sentence, as originally issued by the parole board, clearly informed him that he was required to complete a 180 day sentence in appropriate placement. In addition, he possessed the requisite mental state as set forth in the escape statute. Thus, we conclude that despite the legal defect in the proceedings leading to Lanzieri's confinement, his escape conviction must be upheld.[4]

### D.

▆▆▆▆ In upholding Lanzieri's escape conviction, we recognize the important public policy of the state as reflected in the escape statute. The escape statute was enacted to "deter and punish an escape while a defendant is being held for another felony," even where the defendant is later found not guilty of the underlying felony. *Velarde*, 657 P.2d at 955; *see also People v. Thornton*, 929 P.2d

---

3. Both the trial court and the court of appeals found that a parole officer is not authorized to confine a parolee in a community corrections facility as a condition of parole. The merits of that finding are not before us, and, for the purposes of this opinion, we assume it to be true. We express no opinion as to whether the parole

board could delegate its authority to a parole officer.

4. While there may be a case in which the defect is so egregious that the defendant cannot be found to have been confined at the time of the alleged escape, this is not one such case.

729, 732 (Colo.1996)(reaffirming *Velarde*'s finding that the fundamental purpose of the escape statute is to prevent the evasion of the due course of justice). This rationale acknowledges the dangers inherent in allowing defendants to resort to self-help through escape. Thus, sound public policy requires us, in the absence of a truly "illegal" confinement, to uphold escape convictions despite the existence of procedural defects in a defendant's arrest, confinement, or sentence.

Numerous other jurisdictions have recognized the public policy ramifications of allowing prisoners to escape whenever there is a legal defect in proceedings. *See, e.g., In re Estrada,* 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948, 954 (1965)("To allow prisoners to use force to escape and then to permit the defense that they were unlawfully confined, would create chaos in prison.... Resort to the courts is the normal and traditional method of correcting an unlawful confinement."); *Commonwealth v. Stanley,* 265 Pa.Super. 194, 401 A.2d 1166, 1171 (1979), *aff'd,* 498 Pa. 326, 446 A.2d 583 (1982)(noting that "the difficulties of prison administration would be intolerable if each prisoner was permitted to 'go over the wall' as a means of testing the legality of his incarceration, rather than utilizing the customary means of administrative and judicial redress"); *see also Hamner v. State,* 223 A.2d 532, 535 (Me.1966)("When the Legislature conditioned the crime of escape upon a lawful detention, it did not intend to thwart the legitimate enforcement of the criminal law by any so-called check-right of self-judgment and self-help. It proceeded from the theory that all should yield obedience to lawful authority."). This rationale, as reflected in our statute and explained by other jurisdictions, confirms our holding that defects in a defendant's confinement are appropriately raised by legal means rather than through the unauthorized departure from custody.

### E.

Our reasoning today parallels that used in cases finding that a defendant can be charged with resisting arrest even if the arrest is unlawful. *See People v. Hess,* 687 P.2d 443, 446 (Colo.1984). In *Hess,* we de-termined that under section 18–8–103 of the Criminal Code, a citizen has no right to resist arrest as long as the officer is acting under color of his authority and is not using excessive force. *Id.* An officer acts "under color of his official authority" when, in the regular course of assigned duties, he makes a judgment in good faith based upon surrounding facts and circumstances. § 18–8–103(2), 6 C.R.S. (2000).

We noted that under the common law, an unlawful arrest could be resisted by using reasonable force. *Hess,* 687 P.2d at 445. This common-law rule was based on the idea that an individual was entitled to use reasonable force to prevent an "unlawful invasion of his physical integrity and personal liberty." *Id.* With the enactment of section 18–8–103, however, the legislature made clear that self-help was no longer an appropriate recourse for an individual challenging an arrest made under color of state law. *Id.* at 446. The rationale underlying this change was explained in *Hess:*

> The rights available today to a person who has been arrested far exceed those available to persons who were arrested when the common law rule came into existence. The right to reasonable bail, court appointed counsel, and early judicial determination of probable cause following arrest lessen the impact of an unlawful arrest. As one court has indicated: "Where society has provided a means to obtain prompt and impartial review of legal disputes, the necessity for self-help remedies is radically dissipated and society need no longer tolerate such efforts."

*Id.* at 447 (citation omitted; quoting *Ellison v. State,* 410 A.2d 519, 525 (Del.Super.1979)).

We find this reasoning persuasive in reaching our conclusion today. A defendant should not challenge the legality of his sentence by resorting to self-help when he has the means to seek relief through judicial channels. In Lanzieri's case, the appropriate remedy for his alleged illegal confinement is found in the legal process, not in the unauthorized departure from custody.

### III.

For the reasons stated above, we find that the court of appeals erred in concluding that Lanzieri was not lawfully in custody for the purposes of the felony escape statute. We conclude that Lanzieri's escape conviction should be upheld despite an error in the procedures leading to his confinement. We reverse the judgment of the court of appeals and remand the case for proceedings consistent with this opinion.

Justice COATS does not participate.